Original

FILED
JAN 03 2008
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

Plaintiff's Name Nicolas Moran
Inmate No. E-12779-B1-108-ASU
Address KVSP-P.O. Box 5102
Delano, Ca 93216
Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

Nicolas Moran
(Name of Plaintiff)

vs.

Director of Corrections
Jhon Davey, C. Chrones
Warden, Sergant E. Morales,
Sergant J. Harden, et all,
(Names of all Defendants)

1:08 CV 00016 AWI SMS PC
(Case Number)

COMPLAINT

Civil Rights Act, 42 U.S.C. § 1983 AND 1985, State Tort Law. Demand for Jury Trial.

I. **Previous Lawsuits (list all other previous or pending lawsuits on back of this form):**

A. Have you brought any other lawsuits while a prisoner? Yes ✓ No ___

B. If your answer to A is yes, how many? 2
Describe previous or pending lawsuits in the space below.
(If more than one, use back of paper to continue outlining all lawsuits.)

1. Parties to this previous lawsuit:

Plaintiff Moran V.

Defendants R.S. Gartonde, et, all defendant

2. Court (if Federal Court, give name of District; if State Court, give name of County)
In the united states district court Easter District of California

3. Docket Number CIV-S-00-2210 4. Assigned Judge /S/ Frank C. Damrell Jr.

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)

6. Filing date (approx.) oct 21, 2001 7. Disposition date (approx.) March 8, 2005

(1)

Plaintiff. Nicolas Macan v.

Jhon Dovey. ET. all. Defendant(S)

(2) Court (If Federal Court, Give Name of District; If state court; give name of County
United States District Court Souther District of California.

(3) Docket Number
~~No. 3:07 cv 1020 JM (POR)~~ No. 3:07-CV-01020-JM-POR (4) Jeffrey T. Miller

(5) Disposition
Dismissed For Amended.

(6) Filing date,
June 4, 2007

(7) Disposition date;
August 23, 2007

II. Exhaustion of Administrative Remedies

A. Is there an inmate appeal or administrative remedy process available at your institution?

Yes X No___

B. Have you filed an appeal or grievance concerning ALL of the facts contained in this complaint?

Yes X No___

If your answer is no, explain why not______________________________

C. Is the process completed?

Yes X If your answer is yes, briefly explain what happened at each level.

THE APPEALS COORDINATOR BY PASS, INFORMAL, FORMAL AND FIRST LEVELS, AND PARTIALLY GRANTED MY (602) AT SECOND LEVEL. THIRD LEVEL DENIED ON THE GROUNDS THAT REQUEST FOR MONETARY COMPENSATION ARE BEYOND THE SCOP OF THE APPEALS PROCESS.

No___ If your answer is no, explain why not.

NOTICE: Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit. Booth, 532 U.S. at 734.

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant C. CHRONES is employed as THE WARDEN AT KVSP. P.O. BOX 5102 at DELANO, CALIFORNIA 93216

B. Additional defendants PLEASE, SEE PAGE # 4 FOR ADITIONAL DEFENDANTS.

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

PLEASE, SEE, PAGE # 6 THROUGH 38 STATMENT OF THE CLAIM.

V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

PLEASE, SEE PAGE # 37, 7-28 and page # 38, 1-10.

I declare under penalty of perjury that the foregoing is true and correct.

Date Dec 23, 2007

Signature of Plaintiff [signature]
Nicolas Moran Pro Se

(revised 9/17/03)

## Additional Defendants

(1). D. Hill, A Sergant at KVSP- Delano, Ca 93216;
(2). G. Garza, A Official at KVSP- Delano, Ca 93216;
(3). J. Orosco, an officer at KVSP- Delano, Ca. 93216;
(4). V. Yates, an Officer at KVSP- Delano, Ca 93216;
(5). C. Jackson, an officer at KVSP- Delano, Ca 93216;
(6). J. Lopez, an officer at KVSP- Delano, Ca 93216;
(7). A. Maese, an officer at KVSP- Delano, Ca 93216;
(8). Moreno, an officer at KVSP- Delano, Ca 93216;
(9). M. Aguilar, an officer at KVSP- Delano, Ca 93216;
(10). Chesley, an officer at KVSP- Delano, Ca 93216;
(11). Herrnandez, an officer at KVSP- Delano, Ca 93216;
(12). Cessar, an (MTA) at KVSP- Delano, Ca 93216;
(13). Jhon Does, an officers, at KVSP- Delano, Ca 93216; One Through onehundred. 1-100.

## Jurisdiction

(1) This civil action is brought pursuant to 42 U.S.C. 1983 and a tort claim action. Jurisdition is based upon 28 U.S.C. 1331 and 1343. The matter in controversy exceeds exclusive of interest and cost the sum of then thousand dollars.

Dated on: Dec 23, 2007

Nicolas Moran [signature]
Nicolas Moran Pro se

//

//

//

Statement Of the facts

2. ON or about November 7, 2006. at approximately 8:30 AM Plaintiff Nicolas Moran. #E-12779, an Inmate Of the Department of Corrections and Rehabilitation, at CaliPatria State Prison, CaliPatria, Ca. 92233; was transferred to the Correctional treatment Center (herein "CTC") after felling in a (Mental Health Crisis): The (CTC) Hospital is at Kern Valley State Prison, Delano, California. 93216. Where the Plaintiff has been since then, in under Psychiatric treatment.

3. On or about November 7, 2006, at approximately, 17:08 hours, the Plaintiff was admitte in the infirmary, and after the medical Process was done, the Plaintiff was Placed on room 114. under (Suicide Precautions.

4. ON Or about November 12, 2006. the Plaintiff was interviewed by the (CTC) hospital's Committee, who explain to him, that he was going to be discharged, and sended to Facility "C" (SNY) Yard. after he was explained, a Member Of the Committee, asked, that, "if" he would like to say or ask something. Plaintiff said "yes." He made a "statement" about his "Medical" Problem which have being ignored since November 2001. The Plaintiff told the committee, that on or about April 18, 2001, he had a sergury at California Medical Facility (Herein "CMF"), for Inguinal hernia, and that the doctor left something in side of him. Plaintiff told them that a (CT) Scan was taken on December 12, 2005. and that the results of the exams showed that a "Metallic-clip" was in side, or some unusual "shadows". A Member OF the committe told Plaintiff that they were going to check on it. The Plaintiff thank them, and Got-up of the chair when defendans' orosco and

Yates Order him. On their way out of the Committee's office, defendant Orosco threat the Plaintiff, and told him that "Just for that statement" that Plaintiff made to the committee about his "Medical Problem," they were going to trowed Plaintiff to the Woves. Defendant Orosco told defendant Yates to call their friends that Plaintiff was going to tell them everything. Because, the Plaintiff was under the psychiatric medication he didn't pay any attention to their threats.

5. On or about November 12, 2006, that Plaintiff was discharged, and send it to Facility "C" "8" Block Cell # 213, the next day he requested to (MTA) Cessar, while she was passing out the medications, to take him back to the Hospital, because he was feeling bad. MTA Cessar, talked to the officer and told him tha Plaintiff needs to go back to the (CTC) Hospital. The C/o made a call and Plaintiff was trasported to the Hospital. At approximately, 16:30 hours, Plaintiff was addmitted at (CTC), and at soon as he got there and that defendants J. Orosco and V. Yates hear that Plaintiff was back at the Hospital, they went to pick-him-up at the nurse office. At soon as defendant put hands on plaintiff, defendant Orosco grabed by the back of his neck, put his forearm on Plaintiff's back, and started lefting Plaintiff up, and forcing him to walk fast. On this time Plaintiff asked the defendants that what was their problem, defendants Orosco and Yates Just started hawing like woves.

6. On or about November 14, 2006, Plaintiff, was interviewed by the (CTC'S) committee, and he told them about the assaults and threats from defendants' J. Orosco and V. Yates. The psychiatric staff stated that they were going to check on it.

This day, the committee desided to keep Plaintiff for a few days. Plaintiff was placed on room 108, under suicide precaution since the day before that Plaintiff was back at the hospital, defendants Orosco and Yates's assaults, threats and retaliation did not stoped.

7. On or about November 15, 2006, the defendants Orosco and Yates's threats, assaults and retaliation, cause Plaintiff to have an a "breakdown" and Plaintiff started to hurting himself by hitting at the "walls" of the cell room. After that happen, all the defendants take action against the Plaintiff for "unruled behavior". the Plaintiff was placed under restraints and taked out of his cell-room to be placed at the five-points-room stripped naked and tie-up to a bed by his wrists, ankles, and his chest for more then 8 hours.

8. On or about November 15, 2006, while defendants Orosco and Yates, were transporting Plaintiff to the five-point room, defendants Oroco and Yates use unnexecive force, slamming the Plaintiff against the walls, ignoring Plaintiff's pain and injury. if "it wasn't that officer Mosqueda' intervine" defendants' Orosco and Yates would hurt Plaintiff's shoulder. After that Plaintiff was placed in the five-points-room and tie-up, the defendents orosco and Yates started threating Plaintiff by the intercom system.

9. From, on or about November 13, 2006, Plaintiff started comp- about defendants' threats, retaliation, assaults and harrasments, to their supervisor defendant E. Morales, who was one of the Committee's members, but he deside to do nothing to fix the problem. Defendant E. Morales, just ignored Plaintiff's healt and safety, and defendant E. Morales just started laughing.

Plaintiff Moran, also told defendant E. Morales that he was not ready to be discharged. But defendant Morales, told him "Yes you are." "I got a cell waiting for you!" at this Moment the plaintiff knew that trouble was waiting for him.

10. On or about November 18, 2006, Captain Tyson and Counselor K. Reid, CCI, came to the CTC'S hospital to clear Me-up to go back to the Yard. in this day the plaintiff told Captain Tyson that he cant go to their Yard because he had an enemies in the Yard; and that he dont want to get in any trouble. The captain told Plaintiff that he was going to send Plaintiff to Facility B-Building 1, till Captain Tyson does his investigation to see if what plaintiff stated was true.

11. On or about November 18, 2006. at approximately, 19:10, defendants J. Lopez, and C. Jackson; Now a Counselor, transported Plaintiff, from the (CTC) Hospital, to Facility B-B1- and put Plaintiff on a cage.

12. On this date of November 2006, after that the Plaintiff was placed in the cage, defendant Aguilar, approched to the cage, strepped serched the plaintiff and started threating him. defendant Aguilar told him that he dont wanted to hear any yelling or kicking the cell doors. After he said that, he got Plaintiff out of the cage and placed him on his assigned cell-room. at soon as Plaintiff was inside of the cell that defendant Aguilar took-off the Plaintiff handcuffs, the Plaintiff check the sink watter and noticed that the cell have no running watter, for Plaintiff to drink and to take his Medication. Cell # 123, watter was shut off. the Plaintiff immediately brought the problem to defendant Aguilar,

attension, he told the Plaintiff that he was coming to check on it but he never came back.

13. On or about November 18, 2006. about a half an hour later after Plaintiff was place it on cell #123, defendant a floor officer in the unit, was incharged of keeping track, and Plaintiff's observation record, because he was under suicide precaution. officer Name is Maese, and for more the (5) times The Plaintiff brought the Plaintiff's watter Problem, but each one of Plaintiff's requests were deliberately ignored by defendant Maese.

14. On or about November 18, 2006. after that the Plaintiff broughte the Problem to defendant Maese. The Plaintiff saw, another Officer, that approched to the cell door. The Plaintiff the Plaintiff, immediately brought the watter Problem to him but defendant C. Jackson, deliberately indifferent to Plaintiff's Problem, recklessly ignored him, for about 4-5 times also.

15. On or about November 18, 2006, after that the Plaintiff broughted the watter Problem to the defendants herein mentioned and becouse was ignored, Plaintiff situation started getting real complicated, to the point that Plaintiff's thong started getting stack on his palete. This time the Plaintiff started kicking the door and yelling for watter. Another officer (Jhon do) approched to Plaintiff's cell door, and reclamed "why" he was kicking his door. Plaintiff told him that the sink watter was not working, and that he needs watter to drink, and to take his meds defendant (Jhon do) told Plaintiff that he was going to let his supervisor know. the Plaintiff again asked this (Jhon do) for watter for about 4-5 times as well, but defendant (Jhon Do) too,

intentionaly, deliberately, reckless and indifferent to Plaintiff's health and safety. Maliciously ignored the Plaintiff request.

16. On or About November 18, 2006, after that the Plaintiff broughted his emergency Problem to defendants' Aguilar, Maese, C. Jackson (Whondo) and to the unit supervisor, and that he noticed, that defendants' deliberately, recklessly, and indifferent to the Plaintiff's matter Problem, were ignoring his life health and safety, the Plaintiff started drinking his urines, after almost swallowing his thong twice

17. On or About November 18, 2006. after that the Plaintiff was Intentionaly, deliberatelly, recklessly ignored by the above Mentioned defendants, the (MTA) Cessar was passing the Meeds, the Plaintiff broughted the Problem to her attention but she also, Intentional, recklessly, deliberately and indifferent to the Plaintiff's life health and safety, Maliciously ignored the Plaintiff's situation and refused to give Plaintiff's needed Medication. Defendant (Whondo) was walking with her and he Again Intentional, recklessly, deliberatelly and indifferent to the Plaintiff's life, health and safety, Maliciously ignored the Problem. The Plaintiff didn't take his Medication that day. Their Supervisor, Defendant J. Harden, was in charged of the unit.

18. On or about November 18, 2006. after that the Plaintiff's Life health and safety was intentional, recklessly, deliberatelly, ignored by the supervisor of the unit, Plaintiff had to drink urines all night, because, he didn't take his Medicine.. which was proscribed specially for him to be able to sleep. If it wasn't that the Plaintiff drinked his urines he wouldn't be here

The Plaintiff's watter Problem was fixed till November 19, 2006. about at 10:30-11:30AM. About 16 hours of the beginnig of his Problem.

19. On or about November 19, 2006. at approximately 12:30 PM. The captain Tyson, Came to Facility B. B1-to talk to the Plaintiff. The captain Told the Plaintiff that it was true that Plaintiff's enemice existed. and that he was on the Captain "C" Yard. The captain told the Plaintiff that he was Going to leave Plaintiff at FB-B1 known as (ASU), Pending transferr. The Plaintiff broughted to his attention, what had happened the day before., with the watter. the captain told the Plaintiff that he was Going to Check on it., and he also stated to Plaintiff, that "If" he has any Problems to bring it to the attention of his officers. He also told the Plaintiff that he was Going to leaved him Single status.

20. On or about November 19, 2006. at approximatelly, 9:10 PM. defendant Moreno, an officer here at Building 1-Known as the (ASU), who at all times he also was working the day before, when the Plaintiff Problem with the watter. defendant approched to the Plaintiff's cell-room-door, and direct to Plaintiff to role his Property because he was Going to "C" Yard. The Plaintiff told him that he have enemices at the Yard, and that he was Single cell status. The Plaintiff, asked defendant Moreno, that to what cell he was Going to. defendant Moreno, Intentional, Maliciously, recklessly, and indifferant to Plaintiff's life's health safety, with the Purpose of causing harm and with evil Motive ignored Plaintiff's Problem. and stated that he was Going to Cell 232. at "8" block. which was double cell. The Plaintiff,

told defendant Moreno. what Captain Tyson had told him that day in the afternoon, defendant Moreno, callous Indifferent to Plaintiff's Safety, fill-up the papper work and Send Send Plaintiff to "C" Yard.

21 On or about November 19, 2006, at approximatelly 9:10 PM. Defendants' J. Lopez, and (Whondo) officers of "C" Yard Came to Facility B- Building 1- to transported the Plaintiff to "C" Yard. When these, defendants were plaicing Plaintiff in restrains, the Plaintiff told them that he cant go to "C" Yard, because, he have enemices in there. when Plaintiff saw that they were loughing, the Plaintiff refused to go, the defendants started assaulting the Plaintiff. defendant (Whon do) started Grabing Plaintiff by his neck, and defendant Lopez by his legs, and defendant Moreno broughted them a wheelchair, where they Put Plaintiff and whit threats and abussive words, Intentional, recklessly, With an Evil Motive, deliberatelly indifferent to the Plaintiff's life's health and safety, ignored what the captain Tyson had told to Plaintiff while defendants J. Lopes and (Whon do) were transporting that Plaintiff to Facility "C", defendant (Whon do) was Grabing the Plaintiff by his neck, when defendant J. Lopez, was Grabing Plaintiff's legs, and Calling Him child Molester and rapeiest.

22. On or About November 19, 2006. at approximatelly, 9:15 PM. When the Plaintiff was Getting transported to "C" Yard, by the defendants Herein Mentioned. when they arrive infront of the watch-office, there were defendants, D. Hill a Sergeant and official G. Garza, who at the moment that the Plaintiff

Got wright were they were the defendants immediatelly started assaulting the Plaintiff, at this time there were defendants, G. Garza, Sergant D. Hill, and officers J. Lopez, and (Jhon Does). The (Jhon do) who help J. Lopez to transported the Plaintiff he was still chocking the Plaintiff. while the defendants Garza, Hill, Lopez and some (Jhon Does) that Joined to the beating, assaults, while they were leaving. They Just Put their bags on the floor and came intentionally, recklessly and with a Malicious Motive to hurt and harm the Plaintiff.

23. On or about november 19, 2006. at approximatelly 9:20PM. defendant G. Garza Got right into the Plaintiff's face and told him, to look at his face real Good, and intentional and reckless, callous, deliberately and indifferent to the Plaintiff's life, health and safety, allow all these assaults, and he directly Participate, and stated that he will kill childMolesters and Rapiest. Defendant G. Garza, stated that "if" the Plaintiff Give any Kind of Problems to his officers that he will came and Get him the next day. The Plaintiff told him that Captain tyson had told him that "if" he have any kind of Problem to talk to his officer. Defendant G. Garza, stated that he don't Give a, that his was running the the show.

24. On or about November 19, 2006. Defendant Sergant D. Hill told the Plaintiff that she was Going to be Plaintiff's nightmare. And while (Jhon do) was chocking the Plaintiff, defendant D. Hill, recklessly and Intentional, Motivated by Given Motive, she was kicking Plaintiff on his legs. After that

the Plaintiff Got assaulted by all these defendants, and individual defendants, the sergant D. Hill and the (Jhon do) that at all times herein Mentioned was chocking the Plaintiff on all this time, they took Plaintiff to the watch-office and Placed him on a cage. At all this time the defendants D. Hill and (Jhon Do) were loughing and were calling the Plaintiff all kind of improper names, assaulting him calling him Rapiest and childmolester. When the defendants Put the Plaintiff in the cage, defendants ignored that the Plaintiff was under the effect of Psychiatric Medication and that he was not allowed to possed any kind of harmfull objects. Defendants' actions were Motivated by Evil Motive and with the very Purpose of causing harm to Plaintiff. Because defendant D. Hill, Give a "clip-Board" to the Plaintiff for him to Give her the names of the Plaintiff's enemies. at soon as defendant D. Hill, Give the clip-Board to the Plaintiff, Intentionaly, reckless, deliberately indiferant to the Plaintiff's life and Health and safety walk-out of the room and left the Plaintiff alone. When the defendant came back to the room. Plaintiff had hurt him self, while he Got into a shock. The defendants D. Hill and (Jhon do) Immediatelly called for the Ambulance and the Plaintiff was taken to the Hospital, to Get treatment on his wonds after that the Plaintiff received Medical treatment he was Puted on one of the hospital room on suicide watch, and to keep with the medical treatment on his wonds. At soon as defendants Orosco and Yates Sergant E. Morales and (Jhon does) heard that Plaintiff was back, they again started their

retaliation, assaults and threats. the Plaintiff broughtted to the attention of defendant Sergeant Morales, who deside to no todo nothing to fix the situation.

25. On or about November 27, 2006. The Plaintiff was again discharged from the (CTC) Hospital after receiving the medical treatment for his wonds. Plaintiff was sended back to Facility B-B1-Cell #130. At soon as the Plaintiff was placed in his cell, defendant Officer Palampo. Started threating him, calling him all kind of improper names in front of more than 20, other inmates. Defendant Palampo Intentional, Recklessly, Started harrassing the Plaintiff, deliberatelly Indifferent to Plaintiff's life, Health and Safety.

26. On or about November 27, 2006. when all the individuals defendants, Here at Facility B-B1- knew that Plaintiff was back, They all started their Intentional Malicious conduct, agains the Plaintiff's Rights, Life, health and safety. except C. Jackson, and (Shondo).

27. On or about november 28, 2006, when defendant Moreno heard that Plaintiff was back on the unit, He approched to the Plaintiff's cell-door, and stated "Yor are back, ah? Defendent Moreno, refered him self to Plaintiff's Custody, intentionally and indifferent to the Plaintiff's life, Health and safety, and called Plaintiff Rapiest.

28. On or about December 20, 2006. A Member of the Plaintiff's Family, Got kill and the Plaintiff fall into a diprecion becase they were real close. The Plaintiff talked to his case worker, the psychiatric doctor, and told her what happen. Mrs. Chandler, Inmediatelly request to the officers

to take the Plaintiff to the (CTC) Hospital to be placed in suicide precaution.

29 On or about December 20, 2006, when the Plaintiff when to the (CTC) for medical issues, he left his property in cell #130, and when he came back his property was throwed away. The Plaintiff, started complaining to the officers that are incharged of the personal and legal property, but neither of them knew nothing about Plaintiff's property. The individual defendant Maese, is and was the personal property, and defendant Herrnandez is and was incharged of the legal property. The individual defendant Sergant J. Harden, just stated that Plaintiff was as out, and intentional deliberately indifferent to Plaintiff's property, and his legal work refeused to look for Plaintiff's stuff.

30. From on or about December 20, 2006, through on or about Junuary 2, 2007, the Plaintiff was under suicide observation behind of the depresion that he fell after experiencing all the assaults, threts and retaliation, by the individual defendants' acts.

31 On or about January 7, 2007, under the effects of the psychiatric drugs, that Plaintiff was taking, and under of the depresion behind the threats, assaults and retaliation, by all the individual defendants, the Plaintiff as he could he submitted an appeal (Herein "602") form, in which he explained his situation in a proper manner as he could, about what had happen on or about the dates of November 2006. Because the Plaintiff Moran (Mental Health Crisis), it was hard for him to keep track of the days, and the time.

of the time. The Plaintiff did his best to (report) in the. on the body of his appeal (Herein("602")) all the assaults, threats, harrassment and retaliation that he was subjected by the "Intentional Malicious acts" of the Individual defendants at all times herein mentioned, and each of them., on the three different events, and how each of them Intentionaly, delibe-rate indifferent to the Plaintiff's Health and Safety, acted.

32. On or about January 8, 2007, the Plaintiff, as he could. submitted an appeal (Herein "602") for his Property. The appeal was Partially Granted, by defendant: Herrnandes. but, the appeals coordinator refused to Proccessed.

33. On or about February 10, 2007., in his delesperation he wrote to the office of "Internal Affeirs" leting them know about his situation, and asking for help.

34. On or about march 7, 2007, Captain V. (A) Motchenbacher came to Facility B, B1- to talk to the Plaintiff in regards of the Plaintiff's leter to the Internal Affairs. Captain Mots-chembacher, on this date he accepted that he does have some bad official with a "bad temper." he referred him self to the Individual defendants, E. Morales, J. Harden, D. Hill and C. Garza, Sergeants, and the individual defendants' officers, Orosco, Yates, Moreno, Maesei and C. Jackson; Now a Counselor CCI. The Plaintiff told the captain that he got assaulted (1) for requesting about any Procedure of Plaintiff's Medical Problem, and (2) behind in the Custody that is in his file. The captain got upset and stated "why they do that?". The Plaintiff Just said that he didn't know. Defendant Moreno, was right there in the Interview, when the captain referred him self to the Individual defendants'

temper. The captain went, ah, Moreno? The defendant Moreno, just went aha.

35. On or about March 8, 2007 I received the letter back from the appeals coordinator, B. Gorcewich, where he stated that the Plaintiffs Appeal (Herein "602") was sended to second level review.

36. On or about March 9, 2007, The captain V. Moschenbacher by pass the informal level, formal level, first level review, and and partially granted the Plaintiff's Appeal (Herein "602") for the "assault and Battery." The captain's decision was reviewed by defendant C. Chrones, the warden here at KVSP, and he agree with captain Moschenbacher's decision. Since this specific date, defendant C. Chrones became awared of Plaintiff's "safety concerns" and decide to do nothing to protect the Plaintiff from the individual defendants' "intentional malicious conduct."

37. On or about march 12, 2007, The defendant C. Chrones, responded the Plaintiff's Appeal (Herein "602"), and intentionaly, deliberately, indifferent to the Plaintiff's life, health, and safety, stated that there was no documents, abailable relative to the Plaintiff's incident, for review, i.e., CDC-837 Crime/incident report, CDC-7219, report of injury, or unusual occurrence, CDC-115 Rules violation report, etc. Defendant, C. Chrones's deliberately indifferent to the seriousness of the Plaintiff situation disregarded his (request), Granted the (602) But, he never discharged the individual defendants from the area where the plaintiff was placed, and because of defendant C. Chrones, liability, the Plaintiff became subjected from more assaults, threats and Retaliation by the individual defendants.

38. On or about March 5, and 15, of 2007. The Plaintiff talked to his Caseworker Mrs. Chandler, and explained to her all his Problems. He told her that he was ready to Go to the Yard to leave (adsec) and that the Plaintiff needed to Get out of this institution before something More Serious happen to him. Mrs chandler stated that she reported what The Plaintiff had told her, and she also told to defendant C. Chrones that Plaintiff was ready for transfer. but defendant C. Chrones, Ignored her. And intentionaly indifferent to Plaintiff Safety, did nothing to Fix the Problem.

39. On or about March 20, 2007, J.P. Gonzalez, A.W., CI, in-behalf of defendant, C. Chrones, was assigned to reviewed Plaintiff's letter dated on January 8, 2007, and said that all the issues that the Plaintiff has stated since the begining of all these different events, were reviewed But, denied that the appeals office had a record of Plaintiff filing and appeal relative to the allegations in Plaintiff's letter. J.P. Gonzalez, after reviwing Plaintiff letter, he recommended that the Plaintiff Followed the appeal Process, and he also stated that "if" the Plaintiff "experience" difficulty in delibering an appeal, to bring the issue to the immediate attention of supervisory staff. The supervisory staff, here at Facility B-B1-are defendants, in this claim. They are Part of Plaintiff's assaults, threats and retaliation, with any cause, onecever.

40. On or about February 17, 2007, The Plaintiff submitted his shopping list, but defendant Moreno, losted, He never sended to the store. Defendant Moreno's "intentionally Malicious Conduct" was doing all he could to Get the Plaintiff harm.

41. On June 25, 2007, the plaintiff, requested for some legal to the legal Officer Herrnandez, and he refused to to Give to him, and then brouohted after 10-12 days latter.

42. On or about March 28, 2007, the plaintiff submitted his (appeal "602") For Third level review, to the director of corrections defendant Jhon Dovey, addressing him plaintiff's isues of of the three, different events, leting him know about the acts of each of the Individual defendants.

43. On or about June 21, 2007, plaintiff's appeal, was reviewed by appeals examiner P. Enriquez, Facility captain, on behalf of defendant Jhon Dovey, Director of Department of Corrections. and Rehabilitation. (CDCR) Captain Enriquez didn't stated "why" defendants Orosco and Yates, were going to trowed the plaintiff to the wolves. Captain Enriquez in his review to plaintiff 602), stated that plaintiff "refused to be double cell" but there is no write-ups behind that issue. Captain Enriquez, addressed him self to (California Medical Facility) (CMF), what (CMF) has to do with the issues here at KVSP. Defendant Jhon Dovey. through the Captain Enriquez, became awared of the plaintiff's "Serious Problem" when Captain Enriquez, Stated that "In the event that staff "misconduct" was substantiated" that the situation was going to take the appropriate Course of action. Captain P. Enriquez, in behalf of defendant Jhon Dovey, denied plaintiff's requested issues, in his appeal, and intentionaly, delliberately and indifferent to plaintiff's life and safety concerns, Ordered that no changes or modifications were required. The plaintiff again was maded to suffer more assaults, and retaliation by the individual defendants, here at FB.B1.

44. On or about July 11, 2007. Defendant Aguilar approched to the Plaintiff's cell-door, and told Plaintiff, to beat-up his cellie Risely Thomas, P-95144. because he was requesting Medical treatment and for going back in Fourth to the (CTC) Hospital.

45. On or about August 9, 2007. Defendant Aguilar, again approched to the Plaintiff's cell-door, and again told Plaintiff to beat-up his cellie Anaya, because he was No Good.

46. On or About August 15, 2007, Plaintiff talked to counselor G. Garcia, CCI, and told him about Aguilar issues, and that the Plaintiff did not want to hurt any-body neither himself. but no action was taked to stop the acts and omissions of the defendant Aguilar. And Plaintiff, again was Subjected to suffer his threats, retaliation and intentional malicious conduct.

47. On or about August 31, 2007, Defendants J. Harden, Chesly, and Again defendant Aguilar, intentionaly, reckless and motivated by evil motives deliberately Indifferent to the Plaintiff concerns, about his safety, These Individual defendants Put Inmate Kenton H. Kor CDC# T-95379, in Plaintiff's cell, without signing the cell-move agreement, and been full awared that Plaintiff Moran is a (SNY) Inmate, and Inmate Kor was a (G.P) Inmate. At soon as Inmate Kor was inside of the cell, the Plaintiff asked him (IF) he was a (SNY) and Inmate Kor stated that he was a General Populatiion Inmate, We both Immediatelly broughted to the attention of Sergeant J. Harden, Aguilar, and Chesly, but intentionally Recklessly, deliberately Indifferent to the dangerous situation maliciously Ignored our requests. Again the Plaintiff was made to suffer these Individual deffendants acts and omissions.

48. On or about September 1, 2007. the Plaintiff and his Cellie Kenton H. Kor CDC# T-95379, started to bringing the Problem to their caseworker Mrs Chandler. a Psychiatric doctor who is and at all times Herein Mentioned was the case-worker incharcged for all the (CCCMS and EOP) inmates here at building B-B1-known as the (ASU). where the Most of the Inmates has (Mental health Problems) as now Plaintiff, but she also ignored their request.

49. Since, Inmate Kenton H. Kor, was placed on Plaintiff'S cell. then both started to letting the defendants, J. Harden. C/o Aguilar and Chesley. about their differences but these defendants recklessly, maliciously, deliberately indifferent to the dangerous situation they had put the Plaintiff and his Cellie, ignored their request.

50. On or about September 23, 2007. After requesting to these individual defendants at all time herein Mentioned for a Cell move. Plaintiff and Inmate Kenton H. Kor, Got into a Serious arrgument, to the point that they almost Got into a Fight. after all the tention between Plaintiff and Inmate Kor, Kor, request to talk to defendent Harden, and defendant Harden refused to listen to him. Then Inmate Kor wrote a request and Glued to the Floor and started kicking at the door. Then defendant J. Harden Give the orders to Get Kenton H. Kor out after that Inmate Kor accuse Plaintiff of raping him. Again the Plaintiff was subjected to suffer the acts and omission of the Individual defendants at all times herein mentioned.

51. Defendant E. Morales. A Sergeant here at Kern Valley State Prison. is and at all times herein Mentioned. was the supervisor at the "Correctional Treatment Center" (Herein "CTC") Hospital on (second watch). This Individual defendant, E. Morales, became liable for the fact that: (1) He directly Participate in the retaliation against the Plaintiff behind: (a) Plaintiff's Custody, and (b) for requesting for a follow-up to his Medical treatment in regards of the (CT) scan that was taked on December 12, 2005. (2) He failed to do anything to fix the situation; (3) He created a Policy and Custom allowing and encouraging Illegal acts; (4) He was grossly negligent in managing the People he supposed to supervise; (5) He deny and delay Plaintiff's (Medical, Mental Health crisis), recovery; (6) He Intentionally, deliberately, indifferent to the Plaintiff's (Medical Mental Health Crisis) Cause the Plaintiff to suffer "Infliction and emotional and Physical distress.

52. Defendant E. Morales, at all times herein Mentioned, Knew or should have reasonably should have known about the constitutional violations that were going on in defendant's Presence, or in defendant's direct knowledge. Defendant by virtue of Personal Knowledge of the events discribed in this complaint, in defendant's Presence while these acts were occuring had the authority and duty to stop these violations. As a result of this individual defendent's acts and omissions, Plaintiff Continue to suffer loss of rights, Injury and Pain, all Guarantee by the eighth and fourteenth amendments of the united States Constitution. At all times herein Mentioned, this individual defendant E. Morales, was acting "under color of State Law" and is been sued on his offical and Individual Capacities.

53. Defendants', J. Orosco and V. Yates, a Correctional officers here at Kern Valley State Prison, are and at all times herein Mentioned

were working at the "Correctional Treatment Center" (Herein "CTC"), dealing with Inmates with (Mental Health crisis) as now Plaintiff Moran. Transporting them back and fourth, to the (CTC) Committee's interviews. These individual defendants, became liable for the fact that they: (1) directly participate in the "retaliation, assaults; Harassment, and threats against Plaintiff, for requesting (Medical treatment) to the (CTC) Committee's Members, (2) For the use of Unnecessary Force: (3) for assault and Battery, (4) use of execive Forces, (5) For interfere on Plaintiff's due Process of his Medical treatment, (6) Violation of Plaintiff's Freedom of easpeach, (7) for deny and delay Plaintiff's (Mental Health crisis) recovery, (8) for causing "Infliction, emotional and Physical distress.

54. Defendants' J. Orosco and V. Yates, knew or should have reasonably should have known about the constitutional violations that were going on in defendant presence or within defendants' direct knowledge. Defendants by virtue of personal knowledge of the event discribed in this complaint in defendants' presence, while these acts were occuring, had the authority and duty to stop these violations. As a result of these defendants' acts and omissions, Plaintiff continue to suffer loss of rights, injury and pain, all Guarantee by the eighth and fourteenth Amendments of the united states Constitution. At all times herein Mentioned, defendants J. Orosco and V. Yates, were acting under color of state law), and they've been sued in their official and Individual Capacities.

55. Defendants, (Jhon does), a correctional officers Here at Kern valley state Prison, are and at all times herein Mentioned were working at the correctional Treatment Center, (Herein "CTC") dealing with the Inmates with (mental Health crisis). These defendants became liable for the fact that they: (1) directly participate in the retaliation

against Plaintiff Moran. on or about November 15, 2006; (2) Intentional, deliberately, Indifferant to Plaintiff's Health and safety. Cause "Infliction, emotional and Physical distress"; (3) These defendants, Intentional, deliberately, indifferant to Plaintiff Health and safety, "deny and delay" Plaintiff's (mental Health Crisis) recovery. These defendants knew or should have resonably should have known about the constitutional violations that were going on in defendants' Presence or within the defendants' direct knowledge. Defendants by virtue of Personal knowledge of the events discribed in this complaint; in defendants' Presence, had the authority and duty to stop these violations. As a result of these defendants' acts and omissions. Plaintiff continue to suffer loss of rights, Injury and Pain all Guarantee by the eighth and Fourteenth Amendments of the united states Constitution. at all times Herein Mentioned these (Jhon Does) defendants, were acting "under color of state law" and they've been sued in their official and Individual Capacities.

56. Defendants, Aguilar, Maese, C. Jackson, Moreno, a Correctional officers here at Kern valley state Prison, are and at all times herein Mentioned were working as floor officers here at facility B-B1-known as (ASU), dealing with Inmates with (mental health crisis) as, here now. Plaintiff. These defendants became liable for the fact that they: (1) "directly Participate" in the "retaliation", "threats" and "harrassment" against the Plaintiff on or about November 18, 2006. (2) refused to turn the water on; (3) refused to move Plaintiff to a cell with water; (4) refused to give water to Plaintiff to take his needed medication; (5) failed to "report the incident to their supervisor" defendant sergeant J. Harden; (6) failed to "secure Plaintiff's Health and safety"; (7) and then cause Plaintiff "Infliction, emotional and Physical distress". Defendants, Aguilar, Maese, C. Jack-

son, and Moreno, knew or should have reasonably should have known about the constitutional violations that were going on in defendents' presence or within defendants' direct knowledge. Defendants by virtue of personal knowledge of the event discribed in this complaint in defendants' presence while these acts were occuring, had the authority and duty to stop these violations. As a result of these defendants' acts and omissions, the plaintiff continue to suffer loss of rights, injury and pain, all guarantee of the eighth and fourteenth amendments of the united states constitution. At all times herein mentioned, these defendants were acting "under color of state law" and have been sued on their official and individual capacities.

57 Defendants Moreno; I. Lopez and (Jhon do) as correctional officers, here at Kern valley state prison, are and at all times herein mentioned were working on this especific date, November 19, 2006; in team, and became liable for the fact that they intentionally: (1) "direct participate" on plaintiff's "assault and battery"; (2) retaliation; (3) harrassment; (4) threats; (5) use of unnecessary force; (6) use of extensive force; (7) participate in illegal acts; (8) interfered, deny and delay plaintiff's (mental health crisis) recovery. (9) Failed to report the incident; (10) "recklessly" and "motivated by evil motive" forced plaintiff to go to "C" yard, when it is full documented that plaintiff has enemiges on "C" yard. (10) Cause plaintiff's infliction, emotional, and physical distress. These defendants at all times herein mentioned, knew or should have reasonably should have known, about the constitutional violations that were going on in defendants' presence or within defendants' direct knowledge. Defendants by virtue of personal knowledge of the event discribed in this complaint, in defendants' presence while these acts were occuring, had the authority and duty to stop these violations.

As a result of these defendants' acts and omissions, Plaintiff continue to suffer loss of rights, Injury and Pain, all Guarantee of the eighth and Fourteenth Amendments of the united states Constitution. at all times herein mentioned, defendants, Moreno, J. Lopez and (Jhon do) were acting "under Color of State Law!" and they've been sued on their official and individual capacities.

58 Defendants, official G. Garza, Sergant D. Hill, officers, J. Lopez and (Jhon does) a employees here at Kern Valley State Prison, on this especific date, November 19, or 22, 2006. were working together to move Plaintiff Moran, to "C" Yard, beeing fully awared and documented that Plaintiff Morán has enemies on "C" Yard. They became Liable for the fact that they all: (1) directly Participate on the retaliation against Plaintiff behind his custody. (2) direct Participate on the assault and Battery, (3) direct Participate on the Harrassment, (4) direct Participate on the threats against Plaintiff, (5) direct Participate on unnexessary use of force, directly Participate on use of execive Force, (6) Participate on the "Illegal acts" agains Plaintiff's life, health and safety, (7) deny and delay Plaintiff's (Mental Health crisis) recovery. (8) failed to report the incidant to their Supervisors. (9) recklessly and motivate by evil motive, with the very Purpose of causing harm to Plaintiff's life, healt and safety. (10) Cause Plaintiff an Infliction, emotional and Physical distress. These defendants at all times herein mentioned, knew or should have reasonably should have known about the constitutional violations that were going on in defendants' Presence or, within defendants' direct knowledge. Defendants by virtue of the Personal knowledge of the events discribed in this complaint, in defendants' Presence while these acts were occuring, they had the authority and duty to stop these violations

As a result of these Individual defendants' acts and omission, the the Plaintiff continue to suffer Loss of rights, Injury and Pain all Guarantee by the eighth and Fourteenth Amendments of the United States Constitution. At all times herein Mentioned all these defendants were acting "under color of State Law" and have been sued on their official and Individual capacities.

59. Defendants, J. Harden, Chesly and Aguilar, a Correctional officials, here at Kern Valley State Prison, are and at all times herein Mentioned were working together at Facility B-B1 and dealing with Inmates with (Mental Health Problems). These Individual defendants became liable for the fact that: (1) on or About Agust 31, 2007, at approximatelly 8:30 PM, "Intentionally, recklessly, deliberatelly indifferent to Plaintiff's Life, Health and Safety, Motivated by evil Motive, Put a "General Population Inmate" in Plaintiff's Moran cell, being full awared that Plaintiff Moran is (SNY) Inmate. (2) they failed to Protect Plaintiff from getting harm; (3) failed to Protect Plaintiff from others assaults, threats, retaliation; (4) interfered, deny, and delay Plaintiff's (Mental Health crisis) Recovery (5) They cause Plaintiff" Infliction, emotional and Physical distress. This individual defendants at all times Herein Mentioned, knew Or should have reasonably should have known about the constitutional violation that were going on in defendants' Presence or within defendants' direct Knowledge. Defendants by virtue of Personal Knowledge of the events discribed in this complaint, had the authority and duty to stop these violations. As a result of these Individual defendants' acts and omissions, Plaintiff continue to suffer Loss of rights, Injury and Pain, all Guarantee by the eighth and Fourteenth Amendments of the united States Constitution. At all times herein

mentioned these Individual defendants were acting "Under color of State Law" have been sued on their official and Individual capacities.

60. Defendants D. Hill, sergeant, and (Jhon Do) a officials here at Kern Valley State Prison, are and at all times herein mentioned, were working at "C" Yard on "third watch" on or about November 19, 2006. and they became liable for the fact that they (1) "directly participate" in the "retaliation" against Plaintiff behind his custody. (2) They directly participate on the "assault and Battery"; (3) also participate on the "threats", while they placed Plaintiff on the cage inside of the watch office, (4) defendants D. Hill and (Jhon do)'s use of execive force, (5) use of unnecessary force, (6) failed to protect Plaintiff from others assaults and to do anything to anything to fix the situation; (7) defendants D. Hill and (Jhon do) were full aware of Plaintiff (Mental health crisis) and that he was not to be trusted with objects that might be use as a weapon. (8) defendants D. Hill and (Jhon do) failed to protect Plaintiff from getting harm while defendants allowed the him to use a "clip-board" to hurt him self, (9) defendants failed to make a "Incident report" and to report the incident to their supervisors. (10) defendants interfered, deny and delay, Plaintiff's (mental health crisis) recovery. (11) defendants cause Plaintiff infliction, emotional and physical distress. Defendants at all times herein mentioned, knew or should have reasonably should have known about the Constitutional violations that were going on in defendents' presence or within defendants' direct knowledge. Defendants by virtue of personal knowledge of the events discribed in this complaint, had the authority and

duty to stop these violations. As a result of these Individual defendants' acts and omissions. Plaintiff continue to suffer loss of rights. injury and pain. all Guarantee by the eighth amendment. of the united States constitution. At all times herein Mentioned defendants D. Hill and (Jhondo) were acting "under Color of State Law. and they have been sued on their official and Individual capacities.

61. Accordingly, Plaintiff seek Injuction, Special and compensatory damages related to loss of earning capacity and General damages according to Proof.

62. The acts and omissions directed towars Plaintiff as alleged herein were and have been committed by the Individual defendants and each one of them, Intentional, Maliciously, and Motivate by evil Motive, oppreciviely with wrongful and/or discriminatory Intent to injure, degrade and humilliate Plaintiff.

63. This Intentional Malicious cunduct by defendants and each of them, stemmed from an improper motive; whether Personal or otherwise, which constituted malice, opprecion, and a councious disregard for the rights and safety of the Plaintiff.

64. This defendants' counduct was outrageous and despicable. Accordingly, Plaintiff seeks Punitive damages agaist each and every Individual defendant in an amount appropriate to punish said defendants and to set an example of them.

65. As proximate, Foresseable and direct result of the acts and omissions on the part of the defendants and each of

one of them. Plaintiff has been forced" to suffer more loss of rights, injury and pain. This pain has resulted in headaches and mentaly and physical dificulties involving infliction and emotional distress. Its likely that plaintiff will never fully recover and has sufferred permanent emotional, physical and mental injuries.

66. Plaintiff has also properly applied for and exhausted his addministrative claims process with the California department of corrections, (herein after).

67. On or about June 21, 2007. The (CDC) denied Plaintiff's "Directors Level Appeal" on his appeal filed on January 7, 2007. this was the highest level of appeal allowed by the (CDC). Thus Plaintiff has exhausted his addministrative remmedies... Also on October 16, 2007. Plantiff's government claim was denied.

First Cause of Action
(Violation of title 42 U.S.C. § 1983 et seq)
[All Defendants]

68. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, as though fully set fort herein.

69. The acts and omissions of the individual defendants, and each of them, as alleged above, while they "assault and battery" plaintiff Moran, violate plaintiff's rights, and constituted cruel and unusual punishment under the eight Amendment of the united states constitution.

Second Cause of Action
(Violation of title 42 U.S.C. § 1983 et seq)
[All Defendants]

70. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, as though fully set forth herein.

71. The acts and omissions of the individual defendants and

each of them, as alleged above, while they "use excessive force" against Plaintiff Moran's rights, health and safety, violate Plaintiff's rights, and constitute cruel and unusual punishment under the eighth Amendment of the United States Constitution.

Third Cause Of Action
(Violation of title 42 U.S.C. § 1983 et seq)
[All Defendants]

72. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, as though fully set forth herein.

73. The acts and omissions of the individual defendants' use of unnecessary force, against the Plaintiff's rights, health and safety, violate Plaintiff's rights, and costitute cruel and unusual Punishment under the eighth Amendment of the United States Constitution.

Fourth Cause Of Action
(Violation of title 42 U.S.C. § 1983 et seq)
[All Defendants]

74. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, as though fully set forth herein.

75. The acts and omission of the individual defendants' "retaliation" against the Plaintiff's health and safety, constitute cruel and unusual punishment, under the eighth Amendment of the United States Constitution.

Fifth Cause Of Action
(Violation of title 42 U.S.C. § 1983 et seq)
[All Defendants]

76. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, as though fully set forth herein.

77. The acts and omissions of the individual defendants' "Harass-

ment" against Plaintiff's health and safety, violate Plaintiff's rights, and Constitute cruel and unusual punishment under the eighth amendment of the United States Constitution.

Sixth Cause Of Action
(Violation of title 42 U.S.C. § 1983, et seq.)
[All Defendants]

78. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, as though fully set forth herein.

79. The acts and omissions of the individual defendants, and each of them, as alleged above, while they "failed to protect plaintiff from getting beaten" violate Plaintiff's rights, and constitute cruel and unusual punishment under the eighth Amendment of the United States Constitution.

Seventh Cause Of Action
(Violation of title 42 U.S.C. § 1983, et seq.)
[All Defendants]

80. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, as though fully set forth herein.

81. The acts and omissions of the individual defendants, and each of them, as alleged above, while they "failed to protect the plaintiff from others' assaults, threats, harassment and retaliations" violate Plaintiff's rights and constitute cruel and unusual punishment under the eighth Amendment of the United States Constitution.

Eighth Cause Of Action
(Violation of title 42 U.S.C. § 1983, et seq.)
[All Defendants]

82. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, as though fully set forth herein.

83. The acts and omissions of the individual defendants and each them, as alleged above, "failed to follow-up psychiatric doctors' orders and recommendations" and violate Plaintiff's rights and constitute cruel and unusual punishment under the eighth amendment of the united States Constitution.

Nineth Cause Of Action
(Violation of title 42 U.S.C. § 1983, et seq.)
[All Defendants]

84. Plaintiff hereby incorporates the allegation set forth in paragraphs 1-67, inclusive as though fully set forth herein.

85. The acts and omissions of the individual defendants and each of them, as alleged above. Constitute "Infliction emotional and physical distress, under the eighth Amendment of the united States Constitution.

Tenth Cause Of Action
(Violation of title 42 U.S.C. § 1983; et seq.)
[All Defendants]

86. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, as though fully set forth herein.

87. The acts and omissions of the individual defendants and each of them as alleged above: while "forcing plaintiff to go to a yard where he has enemies" violate Plaintiff's rights and constitute unusual punishment under the eighth Amendment of the united States Constitution.

Eleventh Cause Of Action
(violation of title 42 U.S.C. § 1983, et seq.)
[All Defendants]

88. Plaintiff hereby incorporates the allegations set forth

in paragraphs 1-67, inclusive, as though fully set forth herein.

89. The acts and omissions of the individual defendants and each of them, as alleged above, while "Interfering, denying and delaying" Plaintiff's (Mental Health Crisis) recovery, violate the Plaintiff's rights, and contitute unusual punishment under the eighth Amendment of the united States Constitution.

Twelveth Cause of Action
(Violation of title 42 U.S.C. § 1983, et seq.)
[Defendants, Sergeant J. Harden, Officers, Aguilar, Maese, Moreno, C. Jackson, (Jhondo) and MTA Cessar.]

90. Plaintiff Hereby incorporates the allegations set forth in paragraphs 12-19, inclusive, as though fully set forth herein.

91. The acts and omissions of the individual defendants' and each of them, as alleged above, while "refusing to turn the water on," violate Plaintiff's rights and constitute cruel and unusual punishment, under the eighth Amendment of the united States Constitution.

Thirdteenth Cause of Action
(Violation to title 42 U.S.C. § 1983, et seq.)
[Some Defendants]

92. Plaintiff hereby incorporates the allegations set forth in paragraphs 12-19, inclusive, as though fully set forth herein.

93. The acts and omissions of the individual defendants and each of them, as alleged above, while "refusing to move Plaintiff to another cell", violate Plaintiff rights, and constitute cruel and unusual punishment under the eighth Amendment of the united States Constitution.

Fourteenth Cause of Action
(violation of title 42 U.S.C. § 1983, et seq.)
[All Defendants]

94. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, as though fully set forth herein.

95. The acts and omissions of the individual defendants and each of them, as alleged above, constitute "deliberate Indifference" to Plaintiff's serious (mental health crisis) in violation of the eighth and fourteenth Amendments of the United States Constitution.

Fifteenth Cause of Action
(Violation of title 42 U.S.C. § 1983, et seq.)
[All Defendants]

96. Plaintiff hereby incorporates the allegations set forth in paragraphs 1-67, inclusive, though fully set forth herein.

97. The acts and omissions of the individual defendants and each of them as alleged above, constitute "Negligance" to the Plaintiff's serious "health and safety concerns" in violation of Plaintiff's rights and constitute cruel and unusual punishment under the eighth amendment of the United States Constitution.

Sixteenth Cause of Action
(Violation of title 42 U.S.C. § 1983, et seq.)
[All Defendants]

98. Plaintiff hereby incorporates the allegations set forth in paragraphs 4-9, inclusive, though fully set forth herein.

99. The acts and omissions of the individual defendants and each of them, as alleged above, violate Plaintiff's "freedom of speech", under the eighth and fourteenth Amendments of the United States Constitution.

Seventeenth Cause of Action
(Violation of title 42 U.S.C. § 1983, et seq.)
[Defendants. J. Harden, Aguilar and Chesley]

100. Plaintiff hereby incorporates the allegations set forth in paragraphs 47-50, inclusive, though fully set forth herein.

101. The acts and omissions of the individual defendants and each of them, as alleged above, Constitute deliberate indifference to Plaintiff's health and safety, in violation of the Eighth Amendment, and Cruel and Unusual Punishment in Violation of the Fourteenth and Eighth Amendments of the United States Constitution.

Wherefore; Plaintiff respectfully prays that this Court:

1. Declare that the acts and omissions described herein violated Plaintiff's rights under the constitution and laws of the united States.

2. Enter Preliminary and Permanent injunctions ordering the removal of the Sergeants Possitions, and dismissal of their duties, along with the C/os as the evidence prove their failure to protect Plaintiff health and safety.

3. Enter Preliminary and Permanent injunction ordering the removal of any defendant that has been keeped in duty, in the same "area" building, where the Plaintiff has been subjected to suffer their threats, assaults, retaliation, with no Cause or Justification, at all.

4. Enter Preliminary and injunction relief, for an immediatelly transfer to where I have been endorsed, or to where I came from, for the well-being of Plaintiff's health and safety.

5. Enter Preliminary and Permanent injunction ordering a full investigation on the defendants supervisors, here at Facility "B" B1, for allowing, and Participate in inmates civil rights violations.

6. Enter Preliminary injunction ordering a full investigation, on the Participation of denial of 'inmates cell moves, that subjected the inmates to suffer attacks, from other inmates, and that the denials got inmates killed.

7. Enter Preliminary injunction relief, ordering that the Plaintiff must be taken to an outside hospital to see Private Public doctor for a full check-up of his throat to find out how big is the damaged that was caused while Plaintiff almost swallow his thong, and the damaged that was caused while one of the defendants shocked Plaintiff for about 10 minutes.

8. Enter Judgment in favor of Plaintiff for nominal, compensatory, and Punitive damages, as allowed by law, against each defendant, jointly and severally.

9. Order such additional relief as this Court may deem just and Proper.

Respectfully submitted this 27 day of December 2007.

[signature]
Nicolas A. Moran Pro Se
E-12779 B1-108 ASU
Kern Valley State Prison
P.O. Box 5102
Delano, Ca 93216

INMATE/PAROLEE APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region 1. (KVSP) 2.
Log No. 1. 07-00105 2.
Category 1517

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| MORAN Nicolas | E-12779 | | B1 108L |

A. Describe Problem: On November 4, 2006. I got sick and tooked to the Calipatria hospital in the ambulance because I was having some kind of attacks. when I got to the Hospital I was placed on Suicide watch. The next day, the psychiatric Doctors went to check how I was doing, but I was real bad and they decide to transferred me to a (CTC) Hospital. On November 7, 2006. I was transferred to (CTC) at (KVSP) Delano, Ca, where I was placed on watch precaution. On November 12, 2006. I was discharged and

If you need more space, attach one additional sheet. and Sended to "sny" C-yard SEE ATTACH "A"

B. Action Requested: ① To be transfered to another Prison "Inmediately" or to where I came from. because I fear for my life. ② That all these "officers be dismissed, till when all the investigation is done, by the Marshells. ③ That every C/o that is involve in this Retaliation, pay $15,000 for their negligance, SEE ATTACH (B)

Inmate/Parolee Signature: Nicolas Moran Date Submitted: 1/2/07

C. INFORMAL LEVEL (Date Received: ____________)

Staff Response: ____________

Staff Signature: ____________ Date Returned to Inmate: ____________

RECEIVED APR -2 2007 INMATE APPEALS BRANCH

BYPASS

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: ____________ Date Submitted: ____________

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

RECEIVED JAN 1 8 2007

RECEIVED

st Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other

REVIEWER'S ACTION (Complete within 15 working days): Date assigned: Due Date:

Interviewed by: ~~CORRECTIONAL CAPTAIN (A) V. MORTHENBACHER~~

BYPASS

Staff Signature: Title: Date Completed:

Division Head Approved: Returned

Signature: Title: Date to Inmate:

If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Signature: Date Submitted:

Second Level ☐ Granted ☒ P. Granted ☐ Denied ☐ Other

REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 1/22/07 Due Date: 2/20/07

See Attached Letter

Signature: [signature] CORR. CAPTAIN (A) Date Completed: 3/9/07

Warden/Superintendent Signature: [signature] CDW Date Returned to Inmate: 3-15-07

If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Having Carefully Considered C.J. Chrones's response at second level review Appellant reasonable Concludes that "it would be Imprudent from the "Officials" that were involved on the whole (3) different events, not to make any report." That "shows their "Neglegance" which lead to their "deliberate" by trying to cover their Crime.

SEE ATTACH "C" 1-8

Signature: [signature] Date Submitted: 03/28/07

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

See Attached Letter

Date: JUN 21 2007

CDC 602 (12/87)

They Just Started laughing and calling at me all kind of improper names. (Title 15) 3271. Responsability of employees: every employee, Regardless of his or her assignment, is responsible for the safe custody of the Inmates confined in the Institution of the department. On Title 15, 3391.(a) States that employees shall be alert, courteous and profesional in their dealings with Inmates, Parolees, Fellow employees, visitors and members of the public. employees shall not use indecent, abusive, profane, or otherwise improper language while in duty." On November 19, 2006 at 9:10PM, when I was tooked to "C" yard, all the way the officer that were taking me from (MF) to piece of "S" Raipist & Child M. and then when I arrived to the watch office, there were about another (9-10) officer that were living. when they saw & heard the officer yelling at me, they put their bag in the floor and stated, and joint to the Retaliation; Jelling at me, kicking me, lefting me in the air, Terrorizing me. Mr. Garza told me that rats & pcs, that He goes with them, but Raipist & Child M. that he kill the (MF) that he hate the Son of a Bs. I told him what Capitan Tyson had told me if I have this kind of problems, He said that he didn't give a F. about what he said. He told me not to forget about his name.

When they stop hitting me and shoking me a Sergent and a c/o put me in one of the cages that was inside of the watch office. The Sergent give me a clipBoard to give her names of my enemies, but I was having this kind of attaks and I started cutting my writs; with the clipBoard after that I was tooked to the (CTC) again and placed on Suicide watch, till November 28, 2006. on this day I got discharged and I was placed in Suicide Precaution. My writs were cutted 2 1/2".

ATTACH "B"

and $100,000, for Damages; And the ~~Seargents~~ Sergents to pay $50,000," for their Negligance, and $150,000, for damages; IT is the "responsability" of the Mans who follows, and the "duty" of the Mans who leads them to Honor what they represent, they all knows about the consecuences if they break or take the law in their own hands. In hard times a Man has the right to make a decision, it be cames his duty. The prisoners must be protected it doesn't Matter the cost or what they did. This ocation, In this event, all these officers forgot about they responsabilities, and their ~~[illegible]~~ duties, and were sponsors of Terrorism and Manaces, all these officers that decided to get envolved in this retaliation, didn't have any consideration once so ever ~~[illegible]~~ when all this events accurred. Every one of them were fool aware of my medical problem, and were acting in the color of the law.

I be praying for this Appeal be granted in full, to make an example for other c/os & ~~[illegible]~~ Sergents, To protect other Inmates that have the same medical problem, & those who needs attencion from the officials. and to protect the will been of the Institution. Because for these corrupted officials alot of good c/os get hurt, the Inmates too.

All these officials were full aware of my Mental problem and abused of the situation denying & delying my full recovery with their Cruel unusual punishment. 3332.(d)(1) "Super visor Responsabilities":

The Supervisor in charge of a disiplinary detention unit is responsible for the physical security of the unit, the control of contraband within the unit, and for the safe, sanitary and decent working and living condition within the unit. When any condition within the unit or the behavior, conduct or apperiance of any Inmate confined therein appears to warrant the attention of specific or specialized staff, the matter will be promptly brought to the attention of appropiate staff."

My Matter was never brought to the attention of the Supervisor that was in charge of the unit, or to any other appropiate staff.

(8) block, 213 cell. when I got discharged, I was asked if I have any questions or anything to said. I made a statment about the hernia ... on November 13, 2001. the doctors stated that they have that in "record" already. I thank them, and got up of the chair when C/o Orosco, ordered me. when walking out of the door C/o Orosco, made the "comment" "Just for that statment" we're going to trowed you to the "WOLFS"! He, told C/o Yates to call (Jhon doe) and they both stated that I was going to said everything. On Nov 13, 2006 I request to go back to (CTC) because I was feeling bad. The "MTA" & the C/o that was with her, toored me to the watch office where another officer was wating to take me to the Hospital. when I got to the hospital, I told the Doctors how I was feeling, and they decide to keep me in there for a few days. As soon as C/os Orosco & Yates found out that I was back, they started giving me hard times by acting like wolfs in the speakers control, keeking the cell door, to the point that I was placed in the five points room where I was placed on a bed and tie up from my waits, chest & unckles, for a few hours. I also was given a shot to calm down. after that, when these two C/os left, they told the 3rd/w officers to give me hard time. These 3rd/w C/os went in side in the room and started playing with my mind. they told me that they were the (wolfs), and showed me a tatoo, that one of them have on his left shoulder. all these (four) officers knew about my problem, but they didn't care about my recovery. these four (officers), knew about my nerves & status, they knew that that was the reason that I was "at (CTC) Hospital. they didn't care they just started acting like wolfs. I brought this issue to (Sergent Morales), when we were in the meeting, but he got mad. all he was thinking was the way to (punish me), for "the "R" suffix, that is in my file. He didn't care about the retaliation that was happening in his presence. from November 13, 2006 through November 18, 2006. my medication was the (retaliation) of all these (4) officers. On November 18, 2006. I got discharged again and I was sendit to the cell that the Sergent Morales told me that he had for me. the Capitan Tyson had told me that he was going to placed me in Single cell. when I was placed in the cell, 123, I checked the sink watter and I noticed that that there was non watter to drink. I brought this problem to the C/o Maese, but he ignored me. I talk to C/o Jackson, but he also did the samething. I brought it to the attention of the 3rd officer but he too just laugh. One time this last C/o was walking with the (MTA) when she was passing the medication, and when the nurse give me the medication I told her that I didn't have any watter to take my medication. She got surpriced. she said, what do you mean that you don't have watter? I told her, I got no watter, look at me. I shocking with my tong; I ask these officers for watter, or to moved me to another cell, but they don't want to help me. when I told her that the officers don't want to give me any watter the (C/o Jhon Doe) that was walking with her just put his head down. I ask these (three (3) C/os for watter for more than 3-4 times each; and neither one of them was to bring me some. I got afreid and I started to kicking the door, and yelling at the C/os to bring me some watter, but all that one of them told me, I let the sergent know. I didn't see any sergent in all night. when I was already about 5-6 hours in the cell, with no watter I thought that I was going to die. I was feeling my tong all way down in my through. I had no choice then to drink my urines! I was left to choose between the toilet and my own (~~...~~) (urines). unusal punishment. violation of the (1st, 8th, and 14th) amendments. I almost let it go but I realized that that was their plan; all these officers got together to punished me, for something that I didn't do. Sergent Morales, C/o Orosco, C/o Yates, the C/os from 3rd/w at (CTC), Maese, Jackson, Moreno & (Jhon Doe) and Officer Garza and two more of (Jhon Does) (3) (more Jhon Does) all got involve to commit murder. On November 19, 2006, at 9:10 pm more less, I was in the cell, when officer Moreno aproched to the door and told me that I was moving to "C" yard. I got my stuff and officer Moreno placed me in handcuffs, and placed me in one of the cages that are in the building sections. we were taking, I ask him that what cell I was going to. He said, 232, when he said that, I knew that he was setting me up. because that was doble cell, and I was told by the Capitan Tyson that I was going in single cell status. I told the officer that came to picked me up that I didn't wanted to go to that cell,

(8) block, 213 Cell. when I got discharged, I was asked if I have any questions or anything to said. I made a statement about the "hernia repair" that happen on April 13, 2001. The doctor stated that they have that in "record" already., I thank them, and got-up of the chair, when C/o Orosco ordered me. when walking out of the door C/o Orosco made the "comment" "Just for that statement" we're going to traved you to the "wolves". He told C/o Yates to call (Jhon Do) and they both stated that I was going to said everything. On November 13, 2006. I request to go back to (CTC) because I was felling bad. The "MTA" & the C/o that was with her, Tooked me to the watch office where another officer was waiting to take me to the hospital. when I got to the hospital I told the doctors how I was feelings. and they decided to keep me in there for a few days. At soon as C/os Orosco & Yates found out that I was back. they started giving me hard time. by acting like wolfs in the speakers control, kicking the cell door. to the point that I was placed in "the five-points-room" where I was placed on a bed and tie-up from my wrist, chest, & unkless, for a few hours. I was also given a shot to calm-down. after that, when these two C/os left, they told the 3rd/watch officers to give me hard time. these 3rd/W C/os went inside of the room and started playing with my mind. They told me that they were the (wolfs). and showed me a tatoo, that one of'em have on his left "shoulder". all these (four) officers knew about my problem, but they didn't care about my recovery. These four officers, knew about my nerves status, they knew that that was the reason that I was at (CTC) hospital. They didn't care, they just started acting like "wolfs". I brought this issue to (Sergant Morales) when we were in the meetings, but he got mad. all he was thinking the way to (punished me) for "the "R" sufix, that is in my file. He didn't care about the (retaliation) ~~of all these~~ that was happening in his presence. From November 13, 2006. through November 18, 2006. my medication was the (retaliation) of all these (4) officers. On November 18, 2006. I got discharged again and I was send it to the cell that the Sergant Morales told me that he had for me. The Captain Tyson had told me that he was going to placed me in single cell. when I was placede in the cell #123, I checked the sink watter and I noticed that that there was non watter to drink. I brought this problem to the C/o Maese, But he ignored me. I talk to C/o Jackson, But he also did the samething. I brought it to the attention of the 3rd officer but he too just lough. One time this last C/o was walking with the (MTA) when she was passing the medication. and when the nurse give me the medication I told her that I didn't have any watter to take my medication. She got surprised. She said, what do you mean that you don't have watter? I told her, I got no watter, look at me, I shocking with my tong. I ask these officers, for watter, or to moved me to another cell, but they don't want to help me. when I told her that the officer don't want to give me any watter the (C/o Jhon Do) that was walking with her just put his head down. I ask these (three (3) C/os for watter for more then 3-4 times each. and neither one of them was to bring me some. I got affraid and I started to kicking the door, and yelling at the C/os to bring me some watter, but all the one of them told me. I let the Sergant know. I didn't see any Sergent in all night. When I was already about 5-6 hours in the cell, with no watter I thought that I was going to die. I was feeling my tong all way down in my throush. I had no choice then to drink my (urines) unusual punishment)! I was left to choose between the toilet and my own (urines). unusual punishment). violation of the (first 1st, 8th and 14th) amendments. I almost let it go out I realized that that was their plan! all

A. Discribe Problem: Continuation, attach "A" Exhibit #151 B

• these Officers ... Sergant Morales, C/o Orosco, C/o Yates, the C/os from 3rd fw at (CTC). Maese, Jackson, Moreno (Jhon Do) and Officer Garza, and two more of (Jhon Does), (3) (More Jhon Does) all got involve to Commit Murder. On November 19, 2006. at 9:10 PM. More less, I was in the cell, when Officer Moreno aproached to the door and told me that I was moving to "C" Yard. I got my stuff and officer Moreno placed me in handcuffs, and placed me in one of the cages that are in the Building, section. We were talking I ask him that what cell I was going to, He said, 232. when he said that, I knew that he was setting me up! because that was double cell, and I was told by the Captain Tyson that I was going in single cell status. I told the officer that came to picked up, that I didn't wanted to go to that cell, they just started loughing! and calling at me all kind of improper names. (Title 15. 3271. Responsability of employees. every employee, Regardles of his /or she her assignment, its responsible for the "safe custody" of the Inmates Confined in the institution of the department. On Title 15. 3391. (a) states that employees shall be alert courteous and profecional in their dealing with Inmates, Parolees, fellow employees, visitors and members of the public. employees shall not use indecent, abusive, profane or otherwise improper lenguage, while in duty. On November 19, 2006, at 9:10 PM. when I was tooked to "C" Yard all the way, the officer that were taking me, from (MF) to Piece of "S" Rapiest & child molester M. and then when I arrived to the watch office, there were about another (9-10) officer that were living. when they saw & heard the officers yealling at me, they put their bags in the floor and started, and join to the retaliation, lefting at me, kicking me, lefting me in the air, tercurating me. Mr. Garza, told me that rats & PCs, that he goes with them, but Rapist & child M. that he kill the (MF). that he hate the Son of a Bs. I told him what what Captain Tyson had told me if I have this kind of problems. He said that he didn't give a "F" about what he said. He told me not to forget about his name. When they stop hittin me, and shocking me, a Sergant and a C/o put me in one of the cages that was inside of the watch office. The sergant give me a clipboard to give her names of my enemies. but I was having this kind of attacks and I started cutting my writs with the clip-board. after that I was tooked to the (CTC) again and placed on suicide watch, till November 28, 2006. On this day I got descharged and I was placed in suicide precaution. My writs were cutted 2½".

B. Action Requested: Continuation Attach "B"

... and $ 100,000, for Damages: And the Sergants to pay $ 50,000, for their Negligence, and $ 150,000, for Damages. It is the responsability of the mans who follows, and the duty of the mans who leads them to honor what they represent. They all knows about the consecuences if they break or take that law in their own hands. In hard times a man has the right to make a decision, it became his duty. The prisoners must be protected it doesn't matter the cost or what they did. This ocation, in this event, all these officers forgot about their responsabilities and their duties, and were sponsors of terrorism and manaces, all these officers that deside to get involved in this retaliation, didn't have any consideration once soever, when all this events occurred. Every one of them were fool aware of my medical problem, and were acting under in the color of State Law. I be praying for this appeal be granted in full, to make in example for for other C/os & Sergants, to protect other Inmates that have the same medical problem & those who needs attention from the officials - and to protect the well-being of the institution. because for these corrupted officials alot of good C/os get hurt, the Inmates too. All these officials were full aware of my mental problem and abused of the situation. denying & delying my full recovery with their cruel and unusual punishment. 3332. (d) (1) Supervisor Responsabilities. The supervisor in charged of a disiplinary detention unit is responsible for the physical security of the unit, the control of contraband within the unit, and for the safe, sanitary and decent, working and living condition within the unit. when any condition within the

B. Action Requested: continuation Attach "B" Exhibit #15 / C

unit, or the behavior, Conduct or appereance of any Inmate Confined therein appears to warrant the attention of specific of Specialized Staff, the Matter will be promptly brought to the attention of appropriate Staff.

My Matter was never brought to the attention of the Supervisor that was incharge of the unit, or to any other appropriate Staff.

#1 "EMERGENCY" #189 02/09/07

Transfer (602) & Investigation.

Nicolas Morán
#E12779 B2-105. P.O. Box 5102
Delano, California, 93216

RECEIVED
FEB 21 2007
CDCR
Office of Internal Affairs

Thomas Moore, Assistant Director
Office Of Internal Affairs
P.O. Box 3009
Sacramento, Ca 95812

Sr. Mr Thomas Moore;

with all due of respect I am taking the authority of bothering you with My problem. "I wrote to Rosen, Bien, and she send Me a "pamphlete" which (Contains) your address!" I read that we need to "exhaust" the (602) process. With all due of respect Mr Thomas, I can't wait to exhaust the (602) Levels & process. why? because My situation is real "Serious" at this Institution. The cause of the (officers & Sergants) Retaliation, are the following issues. ① one I Made a statment about an "unusual Metal clip" that was lefted inside of My stomage on April 13, 2001. at (CMF), when I got the Surgery from a Inguanial hernia. ② I been acused of raping My (niece) by Sergant Morales, C/o Moreno, C/o Jackson, C/o Maese & Mr Garza, and (4) more. (3) C/os & (1) Sergant. This "R" Suffix don't supposed to be on My (record.) C-file. because when I was arrested back on 1985. by the (Glendale Police) I was (release) and told that the issue was Not goin to be in My record. When I Made the statment about the

me (rapeist), these C/os put their bags down and joind to beat me up. With them were (1) sergant & (1) he call him self that he was (above) the C/os & the sergant. Mr. Garza is how I call him. His last name. while the C/os were beating me up, Mr. Garza come right into my face, and stated that, sniches & PCs, that he was OK with that. But (Child M. & Rapeist), that he hate them, and that he will kill the mother f. He told me to looked at his face, and to not to forget his name, Garza, OK! he said all lough. I told to all of them that "Captain Tyson" had told me the day before, that if I have any problem to talk to his (Officers.) I asked them that (who) were Captain Tyson (Officers?) Mr. Garza yell all loud "I don't give a F. about what Captain tyson ~~told~~ told you. I am driving the snow right now. He told me that if I give any kind of trouble to his (Officers) that he was going to come and get me. When they finely stop beating me up, I was placed on one of the cages that they have in the watch office. The (1) sergant give me a (clipboard) and "left" just like a weapon to hurt me. That's what they wanted to do. then I start having an (anxaity attack). when that happen they put me in a van and tooked me back to the (CTC) hospital, and I was put in (Suicide watch.) I got out on november 27, 2006. and I've been on (Suicide precaution.) till this day. Because of all those Officers (Negligance.), I got hurt. I got write ups. I lost some of my Legal work, I lost some

"unusual Metal clip" when we were in the Doctors meeting, C/o Orosco, treat Me, and C/o Yates Join him. and the 3rd/w C/os. These treats happen on November 12, 2006.
On November 18, 2006. The Captain Tyson & Sergant Morales, stated that they were going to put Me on a single cell status and Sergant Morales told me that he already got the cell. On November 18, 2006. that I got "discharged" by the doctor committee. I was placed on (SHU) cell 123; This cell didn't had any watter to drink "I almost (die) on this cell" I not even had watter to take my Medication. I asked to the Floor Officers to get Me some watter "but" they Just lough and left. I almost eat My tong. (if) it wasn't that I drink My (Urines) "I wouldn't be here!" C/o Maese & C/o Jackson, and there is another one, that was working with them. (14-16) hours, "with no watter." On the Nobember 19, 2006. I was at the cell (123) at (SHU), when C/o Moreno, approche to the cells door and told Me that I was moving to "C" Yard (8 Block. when I was about to leave de building I asked C/o Moreno, that # of the cell that I was goin to. he said, (232). I told him and to the C/os that I couldn't go to that cell, because I am a single cell status. They Just started laughing and shocking Me, & Kicking Me, & Calling me (rapeiest). all loughted. I was put in a wheel chair and tooked to "C" Yard. When Me and the Officers got infront of the (watch Office) there were about (8-9) C/os leaving, but when they heard the C/os that were taking Me to "C" yard, yelling at Me Calling

Some of My Personal letters. Some "Confidantial" Mail that I was going to send to Captain Tyson, and to the warden. I alredy asked to all the regular C/os that work at (AHU), and no one knows what happen to it. I try to talk to the (Sergant) but he Just told Me that I was (ass out). I have no access to Law Library, I can't even get my Legal work from my property because I don't trust the C/os. The property Officer is C/o Maesel the one that denyed me watter. I already got two months wating for transfer. I got alot of work to do and I'm stock in here, with No help.

No one, wants to take my situation more Serious. I am Just wating to see which C/os are going to keep on going with their game. I am not a (Rapeist) OR a (Child Molester). I'm going to prove my Inocence.

I hope that you be able to take the action that needs to be taken. To make sure that all these Officials get punished for their violation to the Constitution. TITLE 15 #1 Responsibility 3271. & duty.

Respectfully
Nicolas Moran

E-12779
B2-105 Date 02/10/07

# Memorandum

Date : March 8, 2007

To : MORAN, E12779
B1-108L
Kern Valley State Prison

Subject : **CORRESPONDENCE DATED FEBRUARY 9, 2007**

This is in response to your correspondence dated February 8, 2007, addressed to Mr. Thomas Moore, Assistant Director, Office of Internal Affairs, regarding a staff complaint.

A review of the Inmate/Parolee Appeals Tracking System (IATS) indicates the Appeals Office at Kern Valley State Prison (KVSP) received and processed an Inmate/Parolee Appeal Form (CDC 602) regarding the same issue. The CDC 602 was accepted and assigned at the Second Level of review and has a due date of February 26, 2007. The CDC 602 is currently pending.

KVSP has experienced staff shortages in the past that have greatly contributed to the backlog of appeals. These staff shortages have been dealt with; however, the excessive backlog of appeals pending response has made it difficult to maintain the current workload. Overdue appeals are responded to in the order they are received unless the appeal requires emergency processing pursuant to CCR 3084.7. The CDC 602 will be completed as soon as possible.

For your convenience, I have attached a copy of your IATS printout.

B. GRICEWICH
Appeals Coordinator
Kern Valley State Prison

rm

03/08/2007

CALIFORNIA DEPARTMENT OF CORRECTIONS

Inmate/Parolee Appeals Tracking System - Level I & II

Appeal Listing

Sorted By: Issue

| CDC Number | Appellant Name | Area Of Origin | Issue | Log Number | Group Appeal |
|---|---|---|---|---|---|
| E12779 | MORAN, N | B2 | CUSTODY/CLASS. 1985 | KVSP-O- | |
| E12779 | MORAN, N | B2 | DISCIPLINARY 115 | KVSP-O- | |
| E12779 | MORAN, N | B1 | PROPERTY 130 | KVSP-O- | |
| E12779 | MORAN, N | B1 | STAFF COMPLAINTS [illegible] | KVSP-O-07-00165 | |

Level II Review: Received: 01/10/2007 Due: 02/26/2007 Completed: Disposition:

Total: 4

(2 of 2)



#178

State of California

# Memorandum

Date : MAR 1 2 2007

To : Moran, E-12779
B1-108L, Kern Valley State Prison

Subject: **STAFF COMPLAINT RESPONSE - APPEAL # KVSP-O-07-00165**

(A) **APPEAL ISSUE:** In your appeal, you stated that on November 12, 2006, you were discharged from the Correctional Treatment Center (CTC) at Kern Valley State Prison (KVSP) after being on Suicide Watch status. You stated that during your interview with medical staff, you inquired about the status of your hernia operation and any follow-up treatment. You stated that as Correctional Officer J. Orozco escorted you out of the meeting with medical staff, he told you "just for that comment, we're going to throw you to the wolves."

(B) (B) You stated that on November 13, 2006, you were re-housed in the CTC, where Correctional Officer J. Orozco and Correctional Officer V. Yates harassed you by kicking on your cell door and howling like wolves through the intercom system. You stated that Officers Orozco and Yates conspired with other unidentified Third Watch CTC staff to continue harassing you in your CTC room. You stated that you apprised Correctional Sergeant E. Morales of your complaints, which met with negative results.

(C) (C) You stated that on November 18, 2006, you were re-housed in Building B1. However, upon entering your cell, you noticed that there was no running water. You stated that staff, including Correctional Officer C. Jackson (currently assigned as a Correctional Counselor) ignored your concerns about not having any water in the cell. You stated that because you were without water, you were afraid of dying and ultimately resorted to drinking your own urine for survival. You believe that numerous staff members conspired to inflict cruel and unusual punishment against you, including murder.

(d) (d) You stated that on November 19, 2006, you were re-housed on Facility C, but that you refused to be double-celled because you believe you were Single Cell status. You stated that Facility C staff escorted you to the Facility C Program Office where there were approximately nine (9) to ten (10) unidentified officers for the change of shift. You stated that the officers started laughing and pointing their fingers at you and that Correctional Officer G. Garza threatened you, stating that he kills rapists and child molesters. You stated that the officers in the Facility C Program Office choked you, kicked you, and threw you up in the air, terrorizing you.

(E) You request a transfer out of KVSP, that all involved staff members be dismissed, and that an investigation is conducted. You also request that each involved Correctional Officer compensate you in the amount of fifteen thousand dollars ($15,000.00) for negligence and one hundred thousand dollars ($100,000.00) for damages. You further request that each involved Correctional Sergeant compensate you in the amount of fifty thousand dollars ($50,000.00) for negligence and one hundred fifty thousand dollars ($150,000.00) for damages.

#155

Staff Complaint Response
Appeal # KVSP-O-07-00165
Inmate Moran, E-12779

(G) **DETERMINATION OF ISSUE**: A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal has been handled as follows:

(G) ☒ PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
☐ REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (Note: You will be notified of the conclusion of any internal affairs investigation)

(H) **SUMMARY FOR APPEAL INQUIRY:**
You were interviewed on Wednesday, March 7, 2007, by V. A. Motschenbacher, Correctional Captain (A). During the interview, you reiterated the contents of your appeal, stating that you were assaulted as described above.

(I) The following staff members were questioned: Correctional Sergeant E. Morales, Correctional Officer J. Orozco, Correctional Officer V. Yates, Correctional Officer G. Garza, and Correctional Counselor I C. Jackson.

(J) There was no documentation available relative to this incident for review, i.e., CDC-837 Crime/Incident Report, CDCR-7219, Report of Injury or Unusual Occurrence, CDCR-115, Rules Violation Report, etc.

(K) **FINDINGS FOR AN APPEAL INQUIRY:**
Your appeal is PARTIALLY GRANTED at the ☐ First level ☒ Second level, as an inquiry into your allegation has been conducted. ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, results of any inquiry/investigation will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

(L) Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, our administrative remedies will be considered exhausted.

[signature]

C. J. CHRONES
Chief Deputy Warden
Kern Valley State Prison

03/12/07
DATE



#147

State of California

Department of Corrections and Rehabilitation

# Memorandum

Date : September 8, 2006

To : Wardens

Date: 9/18
Distributed Copies To:
Executive Staff

Subject: **NINTH CIRCUIT COURT DECISION CONCERNING PENAL CODE SECTION 148.6**

Penal Code Section 148.6 (attached) has recently been declared unconstitutional by the Ninth Circuit Court of Appeal, which held that it violates the First Amendment. (Chaker v. Crogan (9th Cir. 2005) 428 F.3d 1215.) Section 148.6 makes it a misdemeanor to file "any allegation of misconduct against any peace officer…knowing the allegation to be false…" It also provides, "Any law enforcement agency accepting an allegation of misconduct against a peace officer shall require the complainant to read and sign the following advisory…" The advisory mandated by Section 148.6 applies to all formally filed allegations of peace officer misconduct that the employing agency must investigate under Section 832.5.

As a result, the Division of Adult Institutions will immediately stop utilizing the advisory for allegations of staff misconduct. Staff shall no longer complete the advisory when they are conducting an investigation into allegations of staff misconduct, including allegations made during a Prison Rape Elimination Act (PREA) investigation. *California Code of Regulations, Sections 3391(d) and 3084.1(e) are being modified to eliminate* references to the now unconstitutional law. Finally, the institutions will not be able to hold inmates accountable through any Rules Violation Report or Counseling Chrono for knowingly making a false statement against a peace officer. Upon inmate request, disciplinary cases for knowingly filing a false allegation for peace officer conduct will be rescinded and work credits restored as applicable.

Please ensure that a copy of this memorandum is distributed to your Chief Disciplinary Officer. If you have any questions or concerns, please contact Don C. Price, Correctional Counselor II, Division of Adult Institutions, at (916) 327-5305.

JOHN DOVEY
Director
Division of Adult Institutions

cc: Associate Directors
Tim Virga
Don Price

Attachment

CDC 1617 (3/99)

---

*Attachment*

PENAL CODE SECTION 148.6

***[Subsection (a)(1) has been determined unconstitutional by the 9th Circuit Court]***

(a) (1) *Every person who files any allegation of misconduct against any peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, knowing the allegation to be false, is guilty of a misdemeanor.*

(2) Any law enforcement agency accepting an allegation of misconduct against a peace officer shall require the complainant to read and sign the following advisory, all in boldface type:

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICE CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

**[The following text has been determined unconstitutional by the 9th Circuit Court]**
*IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.*

I have read and understood the above statement.
Nicolas Moran 03/28/07
Complainant

(3) The advisory shall be available in multiple languages.

(b) Every person who files a civil claim against a peace officer or a lien against his or her property, knowing the claim or lien to be false and with the intent to harass or dissuade the officer from carrying out his or her official duties, is guilty of a misdemeanor. This section applies only to claims pertaining to actions that arise in the course and scope of the peace officer's duties.

CDC 1617 (3/99)

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
**KERN VALLEY STATE PRISON**
P.O. Box 6000
Delano, CA 93216-6000

March 20, 2007

Inmate Moran, E12779
Facility B, Building 5-105

Inmate Moran:

(A) I am in receipt of your letter/complaint dated January 8, 2007, addressed to the Warden, which has been assigned to me for review and appropriate response.

(B) In your letter you contend on November 19, 2006, you were assaulted by staff here Kern Valley State Prison (KVSP) in front of the Watch Office. You further contend that you are in fear for your safety and request an immediate transfer to Mule Creek State Prison (MCSP). You have also indicated that staff have confiscated your personal property without just cause and have failed to return it. You also allege that staff is intercepting your out going mail.

(C) A review of this matter has revealed that you appeared before the Institutional Classification Committee (ICC) on January 12, 2007, where your case was referred to the Classification Services Representative (CSR) recommending a transfer to MCSP, Sensitive Need Yard (SNY), with an alternative of Pleasant Valley State Prison (PVSP), Level IV-SNY.

(d) On January 31, 2007, the Classification Service Representative (CSR) endorsed you for transfer to PVSP, Level IV-SNY.

(e) The Appeals Office has no record of your filing an appeal relative to the allegations in your letter although you do have other appeals on file. California Code of Regulations (CCR), Title 15, Section 3084.6. (5), (c), states, "Inmate or parolee response, an appellant must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision".

(f) In the future, please follow the Appeal process and send your complaints/grievances directly to the appeals office on a CDCR 602 Form for proper screening and response. This will allow you an opportunity to exhaust the administrative process.

#166



(G) In the event you experience difficulty obtaining an Appeal form or having a form delivered to the appeals office in accordance with established procedures bring this issue to the immediate attention of supervisory staff in you area, so they may assist in ensuring your appeal is processed appropriately.

(H) If you have any further questions or concerns, you may contact R.W. Nipper, Facility B Captain, via Inmate Request for Interview form.

3/20

J.P. GONZALEZ
Associate Warden, Complex I
Kern Valley State Prison

CC: A. Hedgpeth, Warden (A)

#158

(*) Article 4. Section 3300. States that it is the duty of every employee to do everything possible to prevent disorders, and the each employee must be trained to be familiar with the procedures for handling disorder... This Section also states that disorders and other Emergencies must be reported to Supervisory staff at the earliest possible moment whenever a disorder occurs. A pront Investigation will be made by the warden or "Superintendant." Comment: Farmer DP-4401. "Prevention of Disorders."

(1st) Sergeant Morales failed to avoid the disorder at (CTC) Hospital on November 12, 2006 – November 16, 2006. Sergeant Morales was full aware of my "Mental Health Crisis," and did nothing to stop C/o Orosco, and C/o Yates and the 3w officers, (Jhondoes). He failed from stopping his officers from their behaivor and retaliation towers my person, when they cause me to end up on the five points room, where I was "tie up by my wrists, unckles, chest and I was give a sedant shot.

Article 2. Section 3270. States that, "the primary objetives of the Correctional Institution are to protect the public by safety keepping persons committee to the custody of the director of Corrections and to affront such persons with every reasonable opportunity and encouragment to participate in rehabilitative activities. Section 3270. also states that the requirment of custodial security and staff Inmate and public safety must take precedence over all other considerations in the operation of all the programs and activities of the Institution of the department. All the above mentione officials refused to give me the opportunity to participate in rehabilitative

activities. When they knew or they should have known, that with their behavior they were denying and delying My Mental Health Crisis full recovery. All the above Mentione Officers's Negligance is incompatible with envolving standar of decency, involve unnecessary and wanton infliction of pain and evidance both deliberate Indifferance to my person. The State has failed to resonable protect me from constant treats of violance and assaults from its own staff and this failure violate My Constitutional rights under the Eight Amendment. All the Above Officials forgot about Section 3271. where states that every employee, regardless of his or her assignment, is responsible for the safety custody of the Inmates confined in the Institution of the Department.

(2)nd On the events of November 15, 2006, Sergeant J. Harden, C/o Maese, C/o Moreno, C/o Jackson and (C/o Ihondo), -less they all Ignored my consens about not having water on the cell. They all were aware about my "Mental Health Crisis" and faile to provide me with water to take my Medication. The condition that I went through on the (16) hours that I was lefted in the cell with no water, shock the Conscience are Incompartible with envolving Standars of decency, Involve unnecessary and wanton infliction of pain, and evidance both deliberate Indifferance to ~~the~~ my person protected Interests and "Circumstances and conduct so grossly Incompetent, Inadecuate or excessive as ... to be Intolerable to basis fairness." On the above dates the above officials faile to meet Section 3302. where states that "it is the duty of every employee to do everything possible

to prevent disorders, and that each employee must be trained to be familiar with the procedures for holding disorers. Sergeant J. Harden, faile to follow the Section 3332 (d) where states that the supervisor incharged of a disiplinary detention unit is responsible for the physical security of the unit; the control of contrabando within the unit, and for safe, sanitary and decent working and living conditions within the unit. All the above Officials faile to meet section 3332. As they all faile an violate section 3287 where states that insofar as possible a cell, room or dormitory, bed area and locker will be ~~thro~~ thoroughly inspected immediately upon its vacancy and again, if there is a significant time lapse, before another inmate is assained to the same cell room or dormitory bed and locker. That such inspections are required and must be recoved for segregation, insolation and security housing unit, cells. That the purpose of such inspections is to fix responsability or the obsence of responsability for security and safety hazards and serious contraband in the cell, room or dormitory area. All the above Officials also faile to meet section 3270. General Policy. where states that the requirment of custodial security and of the staff. Inmate and public safety, tace precedance over all other considerations in the operation of all programs and activities of the institution, of the department.

On November 18, 2006. All the above Officials mentioned on the events of the above date, Nov. 18, 06. ~~We~~ they let me to choose over (Toilet water or urines), they all acted

"Maliciously and Sadistically" for the Very purpose of Causin arm. On this (2nd) events" the State again faile to reasonable protect me from contents, threats of violance and assaults from its own staff" and this failure violate my Constitutional rights under the Eight Amendment. With respect to the (Physical environment), that condition that I was leftted by the ~~about~~ above mentioned Officials was grossly Inadequate and Constitutionally Impermissible. On this (2nd) Events, all these Officials, especially Sergeant J. Harden, Violate section 3271, where states that every employee regardless of his or her assignments is responsible for the safety custody of the Inmates confined in the Institution of the department.

3rd

On the Events of November 19, 2006: I state that Captain Tyson had told me that I was going to be single cell. And that he was going to check if what I had told him was true. This happen on November 18, 2006. On November 19, 2006. About 11:30AM - 12:30PM Captain Tyson came to (ASU) to tell me that it was true what I told him. He told me that the Inmate does exist. I told this to C/o Moreno, (C/o Lopez (Female)) and to the C/o that was with C/o Lopez. I told the same to Sergeant Hill, Officer G. Garza, and to the rest of (C/os Jhon does) that were involved in the beating.. but neither one of them wanted to listen. On these 3rd events, the above Mentioned Officials were calling me "Rapiest and child M." all lough; they were calling me all kind of Improper Names." All the above Mentioned Officials, the unknown ones, faile to Secure Section 3391.(a) were states that employees shall be

alert Corteous and profecional in their dealing with Inmates, Pordees, fellow Employees, Visitors and Members of the public. This section also states that employees shall not use Indecent, abusive profane or otherwise Improper language while in duty. That Irresponsible or unethical Conduct or Conduct Reflecting discredict on them selfs or the department, Neither on or duty, shall be evoided by all employees.

All the above Mentioned Officials in the events of the above date, they should have known, they knew or they should have known that with they acts and Irresponsible behiavor they were violating My rights. as they were violating the section 3274. (a) Where states that every Institution head shall maintain a system to account at all times for the Inmates under their Jurisdition. A physical count of all Inmates shall be taken at least four times during each calendar day unless otherwise authorized in writing by the director. This section 3274 (a) states that, "No Inmate activity shal be scheduled at a time which would disrupt a Facility count."

On November 19, 2006. All the above staff, didn't care about no count, or section 3274. as they didn't care about section 3268.1. (a) (1) where states that an employee who uses or observes non-dealy force grader then verval persuation to overcome resistance or gain compliance with an order shall document the fact. That the document shall Identify any witnesses to the Incident and discribe the circumstances given rise to the use of force and the nature and extent of the force used. That, the employee shall provide the document to his or her Inmediate supervisor. Section 3268.1. (b) (1.) states that an employee

who uses deadly, whether on or off duty shall ensure that a Supervisory employee is notified of the incident without delay. 3268.1.(b)(2) also states that the Supervisor shall ensure that the chain of command is notified and all necessary health and Safety, Medical and Security Mesures are initiated. If the incident is an Institution/Facility the Supervisor shall go to the location and ensure that the scene is protected. On this mentioned date, when all these Officers that were terroricing me, stop, I was lefted on hands of Sergeant Hill's and (Jiori.do), who place me on the cage that is on the watch Office.

The Sergeant Hill, and (Clo Rhondo) been full aware that I was having a (Mental health Crisis), and that I was not to trust with any object which I can use as a weapon, the Sergeant Hills, give me a "(clipboard)" to give her names of my enemies, and they both let me by my self with the weapon. These two officials "Negligance" is unaceiptaible, they knew or they should have known that I was on suicide precaution, since Nobember 4, 2006. And on "Suicide watch". These two officers Violate section 3268.2.(a) where states that physical restraint may be used only under following circumstances; (2) when a person history, precent behaivor apparent emotional state or other condition, precents a reasonable likelihood that he or she may be came violant or attempt to scape. (3) when directed by Medical staff, to prevent a person from attempting suicide or inflicting injury to him self or her self. Sergeant Hills, Officer G. Garza, Lopez (Jhondo) and the rest of the Officers that were involved

On the events of November 19, 2006. are incompatible with envolving standards of decency, Involve unnecessary and wanton Infliction of pain and evidance both "deliberate Indifferant" to my confined protected Interests and "circumstances and conduct so grossly Incompetant, Inadequate or excessive as ... to be Intolerable to ~~basic~~ basic fairness." Article 2. Section 3270 states that "The primary ~~Objects~~ Objetives of the Correctional Institution are to protect the public by safely keeping persons committee to the custody of the director of corrections, and to effort such person with every reasonable Opportunity and encouragment to participate in Rehabilitative activities. The requirment of custodial security and of staff Inmate and Public Safety must take precedance over all other considaration in the Department. The state has failed to reasonable protect me from constant threats of violance and assaults from its own staff, and this failure violate my Constitutional rights under the eight Amendment. (1)(1E) The statment that I made about my medical problem "OR" (2) The custody/class that is in my C-File were the issues why" Officials, Sergent morales, c/o Orosco, c/o Yates, c/o Moreno, c/o Maese, c/o Jackson Sergeant J. Harden, Sergent Hills, Official G. Garza, c/o Lopez, and all the (Jhon does) 1-25. got togethe to violate my (Constitutional rights), with respect to the "physical environment" their acts are grossly Inadequate and Constitutionally Impermissible. IN violation of Section 3271. where states that every employee Regardless of his or her assignment, is responsible for the safety

Custody of the Inmates Confined in the Institution of the department.

Article 9. Mental Health Services.

3360.(a) States that the Department will provide a broad range of mental health services to Inmates and parolees by assessing the needs of its population and developing specialized programs of mental health care to the extent resources are available for this purpose. This Mentioned Section, also states that Necessary and appropriate mental health services will be provided to Inmates and parolees, and adequate staff and facilities will be maintained for the delivery of such services. also on Section 3361. (C) States that Recognizing that mental health care often involves reveling deeply personal and private matters, all mental health care shall be provide in such a manner as to maintain the dignity of the Inmate. That professional relationship shall be conducted with proper privacy, with due regard for the professional to take necessary and appropriate action to prevent harm to the patient or to other. Officer G. Garza, Sergeant Morales, Sergeant J. Harden and Sergeant Willias Captain Tyson, faile to properly supervise or train the officers that participate on the violation of my federal Constitutional and statutory rights.

Because of the acts of the above mentioned officials, "The Administrative Determination" is Inapropriate. And Action Requested Remains the Same.

Respectfully, Dated 03/28/07

[signature] #E-12779
B-1 108L

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: JUN 21 2007

In re: Moran, E-12779
Kern Valley State Prison
P.O. Box 6000
Delano, CA 93216

IAB Case No.: 0612548 Local Log No.: KVSP 07-00165

(A) This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner P. Enriquez, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

(B) I **APPELLANT'S ARGUMENT:** It is the appellant's position that he was placed in the Kern Valley State Prison (KVSP) Correctional Treatment Center (CTC) for suicide watch and upon his release Correctional Officer (CO) Orozco told him they were throwing him to the wolves. He contends CO Orozco told other staff to harass him and that CO Orozco and CO Yates were howling like wolves over the intercom and kicking his door. He contends that third watch staff continued the harassment and one officer showed him a tattoo of a wolf on his shoulder. He was moved to a cell that had no drinking water and he was forced to choose between drinking water out of the toilet or drinking his own urine. He claims he drank his urine to survive. He claims he was escorted to the Program Office when he refused to be double celled "where" nine to ten officers laughed at him and CO G. Garza told him that the CO killed rapist and child molesters "the California Medical Facility." He claims he was then choked, kicked and thrown in the air to terrorize him. He claims he was placed in a holding cell and asked by a Correctional Sergeant to write his enemies names down, but instead he used the clip board to cut his wrists. He was then placed in the CTC on suicide watch again. He requests a transfer to another prison immediately for fear of his life, that all officers involved be dismissed until the investigation is completed, that each CO involved in the retaliation pay $15,000.00 for their negligence and $10,000.00 for damages, Sgts. pay $50,000.00 for negligence and 150,000.00 for damages and this appeal be granted in full to make and example of them.

(C) At the Director's Level of Review he presents a nine page detailed report with the names of staff he claims were involved in the incidents.

(d) II **SECOND LEVEL'S DECISION:** The reviewer affirms that appropriate supervisory staff have been assigned to conduct an inquiry into this matter. The assigned inquiry staff member reviewed the submitted material and interviewed the involved parties. The appellant was advised that he would only be informed of the completion of the inquiry in that all personnel issues were considered confidential and would not be released to the public, staff or inmates. The appeal was granted in part by the Second Level of Review (SLR) in that an appeal inquiry was conducted into the appellant's allegations.

(e) III **DIRECTOR'S LEVEL DECISION:** Appeal is denied.

(f) A. **FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the SLR.

(g) In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. However, upon completion of final review, or culmination of an inquiry, the appellant is to be notified by the respective inquiry body that an inquiry has been completed. In this case, the institution has reported the completion of the inquiry to the appellant. The appellant is advised that requests for monetary compensation are beyond the scope of the appeals process.

#i68



(h) **B. BASIS FOR THE DECISION:**
California Penal Code Section: 832.7, 832.8
California Code of Regulations, Title 15, Section: 3004, 3360, 3365, 3391

(i) **C. ORDER:** No changes or modifications are required by the institution.

(J) This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, (formerly known as the State Board of Control), Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

N. GRANNIS, Chief
Inmate Appeals Branch

cc: Warden, KVSP
Appeals Coordinator, KVSP

# Government Claims Form

California Victim Compensation and Government Claims Board
P.O. Box 3035
Sacramento, CA 95812-3035
1-800-955-0045 • www.governmentclaims.ca.gov

State of California
RECEIVED
Victim Compensation and Govt Claims Board
AUG 02 2007
Government Claims Div.
For Office Use Only
Claim No.: 569451

## Is your claim complete?

- ☐ New! Include a check or money order for $25 payable to the State of California.
- ☐ Complete all sections relating to this claim and sign the form. Please print or type all information.
- ☐ Attach receipts, bills, estimates or other documents that back up your claim.
- ☐ Include two copies of this form and all the attached documents with the original.

## Claimant Information

1. Nicolas Moreno # E-12779 BI-108 "ASU"
Last name / First Name / MI

2. Tel:

3. Email:

4. P.O. Box 5102 KVSP. BI-108 ASU — Delano — CA — 93216
Mailing Address / City / State / Zip

5. Best time and way to reach you: By Mail

6. Is the claimant under 18? ☐ Yes ☒ No — If YES, give date of birth: MM DD YYYY

## Attorney or Representative Information

7. Last name / First Name / MI

8. Tel:

9. Email:

10. Mailing Address / City / State / Zip

11. Relationship to claimant:

## Claim Information

12. Is your claim for a stale-dated warrant (uncashed check) or unredeemed bond? ☐ Yes ☐ No
State agency that issued the warrant: — If NO, continue to Step 13.
Dollar amount of warrant: — Date of issue: MM DD YYYY
Proceed to Step 22.

13. Date of Incident: ON OR ABOUT: NOVEMBER 12, 18 and 19, OF 2006.
Was the incident more than six months ago? ☒ Yes ☐ No
If YES, did you attach a separate sheet with an explanation for the late filing? ☒ Yes see attach ☐ No

14. State agencies or employees against whom this claim is filed:
Department of Corrections & R. Director of Corrections, Warden of Kern Valley State Prison, Sergeant E. Morales, Sergeant J. Harden, Sergeant Hill and Co. Garza. (John Does) 1-100.

15. Dollar amount of claim: $50,000 +
If the amount is more than $10,000, indicate the type of civil case: ☐ Limited civil case ($25,000 or less) ☒ Non-limited civil case (over $25,000)
Explain how you calculated the amount:
The wounds cause by the Defendants, Exact Damage ~~known~~ unknown

Location of incident:

KVSP- P.O. Box 5102 Delano California 93216

Describe the specific damage or injury:

I suffered injuries when I got beat up by the staff.

Explain the circumstances that led to the damage or injury:

(1) FOR MAKING A STATEMENT ABOUT MY MEDICAL PROBLEM.. AND (2) BECAUSE DEFENDANTS SAID THAT I AM A CHILD M / A RAPEIST.

Explain why you believe the state is responsible for the damage or injury:

BECAUSE THE STATE EMPLOYEES PERFORMED A FELONIOUS ACT. UNDER COLOR OF STATE LAW

Does the claim involve a state vehicle? ☐ Yes ☐ No

If YES, provide the vehicle license number, if known:

## Auto Insurance Information

Name of Insurance Carrier

Mailing Address | City | State | Zip

Policy Number: | Tel:

Are you the registered owner of the vehicle? ☐ Yes ☐ No

If NO, state name of owner:

Has a claim been filed with your insurance carrier, or will it be filed? ☐ Yes ☐ No

Have you received any payment for this damage or injury? ☐ Yes ☐ No

If yes, what amount did you receive?

Amount of deductible, if any:

Claimant's Drivers License Number: | Vehicle License Number:

Make of Vehicle: | Model: | Year:

Vehicle ID Number:

## Notice and Signature

I declare under penalty of perjury under the laws of the State of California that all the information I have provided is true and correct to the best of my information and belief. I further understand that if I have provided information that is false, intentionally incomplete, or misleading I may be charged with a felony punishable by up to four years in state prison and/or a fine of up to $10,000 (Penal Code section 72).

Nicolas Morin — 07/25/07

Signature of Claimant or Representative — Date

Mail the original and two copies of this form and all attachments with the $25 filing fee or the "Filing Fee Waiver Request" to: Government Claims Program, P.O. Box 3035, Sacramento, CA, 95812-3035. Forms ca also be delivered to the Victim Compensation and Government Claims Board, 630 K Street, Sacramento.

## For State Agency Use Only

Name of State Agency | Fund or Budget Act Appropriation No

Name of Agency Budget Officer or Representative | Title

Signature | Date

VCGCB-GC-002 (Rev. 8/0

# AFFIDAVIT FOR WAIVER OF GOVERNMENT CLAIMS FILING FEE AND FINANCIAL INFORMATION FORM

*(Request for Permission to Proceed In Forma Pauperis)*

California Victim Compensation and Government Claims Board
P.O. Box 3035
Sacramento, CA 95812-3035

1-800-955-0045 • www.governmentclaims.ca.gov

RECEIVED
Victim Compensation and Govt Claims Board
State of California
AUG 02 2007
Government Claims Div.

For Office Use Only
Claim No.:

*I request a fee waiver so that I do not have to pay the $25 fee to file a government claim with the Victim Compensation and Government Claims Board. I cannot pay any part of the fee.*

## Claimant Information

1. Moran Nicolas A. #E12779 B1-108L
Last name First Name MI

2. Tel: [ ]

3. Claim Number (if known): [ ]

## Employment Information

4. My occupation: State Prisoner
My employer: California Department of Corrections
P.O. Box 5102 KVSP. | Delano | Ca | 93216
Employer's Mailing Address | City | State | Zip
My spouse's or partner's employer: N/A
Employer's Mailing Address | City | State | Zip

5. If you are an inmate in a correctional facility, please attach a certified copy of your trust account balance, enter your inmate identification number below and skip to step 23.
Inmate Identification Number: #E-12779

## Financial Information

6. I am receiving financial assistance from one or more of the following programs. ☐ Yes ☐ No
If no, proceed to step 7. If yes, check all that apply, then skip to step 24.
- ☐ SSI and SSP: Supplemental Security Income and State Supplemental Payments Programs
- ☐ CalWORKS: California Work Opportunity and Responsibility to Kids Act
- ☐ Food Stamps
- ☐ County Relief, General Relief (GR), or General Assistance (GA)

7. Number in my household and my gross monthly household income, if it is the following amount or less:

| | Number | Monthly family income | | Number | Monthly family income |
|---|---|---|---|---|---|
| A ☐ | 1 | $969.79 | F ☐ | 6 | $2,626.04 |
| B ☐ | 2 | $1,301.04 | G ☐ | 7 | $2,957.29 |
| C ☐ | 3 | $1,632.29 | H ☐ | 8 | $3,288.54 |
| D ☐ | 4 | $1,963.54 | I ☐ | There are more than 8 people in my family | |
| E ☐ | 5 | $2,294.79 | | Add $331.25 for each additional person. | |

Number: [ ] Total Income: [ ]

If you checked a box in step 7 A through I, complete steps 9 through 15. Then skip to step 24.

8. My income is not enough to pay for the common necessities of life for me and the people in my family, and also pay the filing fee. ☐ Yes ☐ No
If yes, fill in steps 9 through 24.

| | | | | |
|---|---|---|---|---|
| 9 | My gross monthly pay is: $ | 10 | My income changes each month: | ☐ Yes ☐ No |

| 11 | Number of persons living in my home: | | | | 12 | Other money I get each month | |
|---|---|---|---|---|---|---|---|
| | Name | Age | Relationship | Monthly Income | | Source: | |
| A | | | | $ | A | | $ |
| B | | | | $ | B | | $ |
| C | | | | $ | C | | $ |
| D | | | | $ | D | | $ |
| E | | | | $ | E | | $ |
| F | | | | $ | F | | $ |
| 15 | My total gross monthly household income: | | | $ | 13 | Total other money: | $ |
| 16 | My payroll deductions are: | | | | 14 | My monthly income: | $ |

| | | | | | |
|---|---|---|---|---|---|
| A | | $ | E | | $ |
| B | | $ | F | | $ |
| C | | $ | G | | $ |
| D | | $ | H | | $ |
| | | | 17 | My total payroll deduction amount is: | $ |
| 18 | My monthly take home pay is | $ | 19 | My net monthly income: | $ |

**20** I own or have interest in the following property:

| | | | | | | |
|---|---|---|---|---|---|---|
| A | Cash | $ | C | Cars, other vehicles, and boats (List make and year) | | |
| B | Checking and savings (List banks): | | | Property | Value | Loan Balance |
| | 1) | $ | 1) | | $ | $ |
| | 2) | $ | 2) | | $ | $ |
| | 3) | $ | 3) | | $ | $ |
| | 4) | $ | D | Real estate (List addresses) | | |
| | | | 1) | | $ | $ |
| | | | 2) | | $ | $ |

**21** My monthly expenses are:

| | | | | | | |
|---|---|---|---|---|---|---|
| A | Rent or house payment | $ | J | Installment payments (specify) | | |
| B | Food and household supplies | $ | | 1) | $ | |
| C | Utilities and telephone | $ | | 2) | $ | |
| D | Clothing | $ | | 3) | $ | |
| E | Laundry and cleaning | $ | | Total installment payments: | | $ |
| F | Medical and dental | $ | K | Wage assignment or withholdings | | $ |
| G | Insurance | $ | L | Spousal or child support | | $ |
| H | School, child care | $ | M | Other: | | |
| I | Transportation and auto expenses | $ | | 1) | $ | |
| | | | | 2) | $ | |
| | | | | Total other expenses: | | $ |

**22** Total monthly expenses: $

**23** I have attached other information that supports this application on a separate sheet. ☐ Yes ☐ No

## *Signature Section*

**24** *I declare under penalty of perjury under the laws of the state of California that the information on this form and all the attachments is true and correct.*

Nicolas Moran — 07/25/07

*Signature of Claimant* *Date*

VCGCB-GC-0010 8/04

Attach Page

#13 Explanation for the late filing day:

I had to wait untill I Exhausted The Remedies Of the 602 Procces.

---

#19 Because the States Employees Performed A, Felonious act, Under Color of State Law.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Nicolas Moran
Plaintiff

vs.

Warden & CDCR, D.O.C. ET, all
Defendant(s)

**APPLICATION TO PROCEED IN FORMA PAUPERIS BY A PRISONER**

**CASE NUMBER:**

I, Nicolas Moran, declare that I am the plaintiff in the above-entitled proceeding; that, in support of my request to proceed without prepayment of fees under 28 U.S.C. § 1915, I declare that I am unable to pay the fees for these proceedings or give security therefor and that I am entitled to the relief sought in the complaint.

In support of this application, I answer the following questions under penalty of perjury:

1. Are you currently incarcerated: ☒ Yes ☐ No (If "No" DO NOT USE THIS FORM)

   If "Yes" state the place of your incarceration. KVSP. P.O. Box 5102, Delano, Ca. 93216

   **Have the institution fill out the Certificate portion of this application and attach a certified copy of your prison trust account statement showing transactions for the past six months.**

2. Are you currently employed? ☐ Yes ☒ No

   a. If the answer is "Yes" state the amount of your pay.

   b. If the answer is "No" state the date of your last employment, the amount of your take-home salary or wages and pay period, and the name and address of your last employer.

3. In the past twelve months have you received any money from any of the following sources?

   a. Business, profession or other self-employment ☐ Yes ☒ No

   b. Rent payments, interest or dividends ☐ Yes ☒ No

   c. Pensions, annuities or life insurance payments ☐ Yes ☒ No

   d. Disability or workers compensation payments ☐ Yes ☒ No

   e. Gifts or inheritances ☐ Yes ☒ No

   f. Any other sources ☐ Yes ☒ No

If the answer to any of the above is "Yes" describe by that item each source of money and state the amount received and what you expect you will continue to receive. Please attach an additional sheet if necessary.

4. Do you have cash or checking or savings accounts? ☐ Yes ☒ No

If "Yes" state the total amount: ________________

5. Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or other valuable property? ☐ Yes ☒ No

If "Yes" describe the property and state its value. ________________

6. Do you have any other assets? ☐ Yes ☒ No

If "Yes" list the asset(s) and state the value of each asset listed.

7. List the persons who are dependent on you for support, state your relationship to each person and indicate how much you contribute to their support. NONE

I hereby authorize the agency having custody of me to collect from my trust account and forward to the Clerk of the United States District Court payments in accordance with 28 U.S.C. § 1915(b)(2).

To my knowledge,
I declare under penalty of perjury that the above information is true and correct.

July 1, 2007 — DATE

Nicolás Molina #E-12779 B1-108L — SIGNATURE OF APPLICANT

**CERTIFICATE**

(To be completed by the institution of incarceration)

I certify that the applicant named herein has the sum of $ 0 on account to his/her credit at Kern Valley State Prison (name of institution). I further certify that during the past six months the applicant's average monthly balance was $ 49.80. I further certify that during the past six months the average of monthly deposits to the applicant's account was $ .80.

(Please attach a certified copy of the applicant's trust account statement showing transactions for the past six months.)

7-18-07 — DATE

T. Scruggs, Acct Tech — SIGNATURE OF AUTHORIZED OFFICER

REPORT ID: TS3030 REPORT DATE: 07/18/07

PAGE NO: 1

CALIFORNIA DEPARTMENT OF CORRECTIONS
KERN VALLEY STATE PRISON
INMATE TRUST ACCOUNTING SYSTEM
INMATE TRUST ACCOUNT STATEMENT

FOR THE PERIOD: JAN. 01, 2007 THRU JUL. 18, 2007

ACCOUNT NUMBER : E12779 BED/CELL NUMBER: FBB100000000108L
ACCOUNT NAME : MORAN, NICOLAS ACCOUNT TYPE: I
PRIVILEGE GROUP: D

TRUST ACCOUNT ACTIVITY

| DATE | TRAN CODE | DESCRIPTION | COMMENT | CHECK NUM | DEPOSITS | WITHDRAWALS | BALANCE |
|---|---|---|---|---|---|---|---|
| 01/01/2007 | | BEGINNING BALANCE | | | | | 145.23 |
| 01/08 | FC07 | DRAW-FAC 7 | 1019ASUB1D | | | 45.00 | 100.23 |
| 01/12 | D320 | TRUST FUNDS T | 1071/CAL | | 4.77 | | 105.00 |
| 01/31 | FR01 | CANTEEN RETUR | 601198 | | | 3.45- | 108.45 |
| 02/20 | FC02 | DRAW-FAC 2 | 1334/FB3D | | | 45.00 | 63.45 |
| 02/28 | FR01 | CANTEEN RETUR | 601395 | | | 45.00- | 108.45 |
| 03/19 | FC07 | DRAW-FAC 7 | 1515ASUB3D | | | 45.00 | 63.45 |
| 04/23 | FC07 | DRAW-FAC 7 | 1735ASUB3D | | | 45.00 | 18.45 |
| 05/03 | W515 | COPY CHARGE | 1823/COPY | | | 1.40 | 17.05 |
| 05/21 | FC07 | DRAW-FAC 7 | 1923ASUB3D | | | 17.05 | 0.00 |

TRUST ACCOUNT SUMMARY

| BEGINNING BALANCE | TOTAL DEPOSITS | TOTAL WITHDRAWALS | CURRENT BALANCE | HOLDS BALANCE | TRANSACTIONS TO BE POSTED |
|---|---|---|---|---|---|
| 145.23 | 4.77 | 150.00 | 0.00 | 0.00 | 0.00 |

| CURRENT AVAILABLE BALANCE |
|---|
| 0.00 |

THE WITHIN INSTRUMENT IS A CORRECT COPY OF THE TRUST ACCOUNT MAINTAINED BY THIS OFFICE.
ATTEST:

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION

BY [signature]
TRUST OFFICE

C A L I F O R N I A
VCGCB
Victim Compensation & Government Claims Board

STATE OF CALIFORNIA
ARNOLD SCHWARZENEGGER, Governor

GOVERNMENT CLAIMS PROGRAM
400 R Street, 5th Floor • Sacramento, California 95814
Mailing Address: P.O. Box 3035 • Sacramento, California 95814
Toll Free Telephone Number 1-800-955-0045 • Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

ROSARIO MARIN
Secretary
State and Consumer Services Agency
Chairperson

JOHN CHIANG
State Controller
Board Member

MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member

KAREN McGAGIN
Executive Officer

Nicolas Moran E12779
PO Box 5102
Delano, CA 93216

October 22, 2007

RE: Claim G568817 for Nicolas Moran, E12779

Dear Nicolas Moran,

The Victim Compensation and Government Claims Board (VCGCB), at its hearing on October 16, 2007, denied your application to present a late claim.

If you have questions about this matter, please mention letter reference 122 and claim number G568817 when you call or write your claim technician or analyst at (800) 955-0045.

Sincerely,

Laura Alarcòn, Program Manager
Government Claims Division
Victim Compensation and Government Claims Board

cc: D-8 Attorney Generals Office, Attn: Tort Claims Coordinator

Warning
"If you wish to file a court action on this matter, you must first petition the appropriate court for an order relieving you from the provisions of Government Code 945.4. (Claim presentation requirement). See Government Code Section 946.6. Such Petition must be filed with the court within six (6) months from the date your application for leave to present a late claim was denied." You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately. PLEASE CONSULT GOVERNMENT CODE SECTION 955.4 FOR PROPER SERVICE OF SUMMONS AND COMPLAINT.

Ltr 122 Board Late Claim Denial

Ex.

STATE OF CALIFORNIA, DEPARTMENT OF CORRECTIONS
INSTITUTION-KVSP
CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTES

| DATE | SUICIDE PREVENTION 5-DAY FOLLOW-UP NOTES DAY# 1 SNAVELY |
|---|---|
| 11/22/2006 | Inmate was seen this day as part of a 5-Day Suicide Follow-Up after discharge from MHCB. He was seen in a confidential/non-confidential interview. |
| TIME 0915 | MENTAL STATUS EXAM: BROKEN ENGLISH W/ SOME STUTTERING BUT COOPERATIVE, ALERT + ORIENTED W/ SOME HESITATION, DENIES WANTING TO KILL SELF NOW. |
| | CONTINUING RISK FACTORS: SHAKY, MODERATE ANXIETY, SOME DEPRESSION BUT FUTURE ORIENTED, i.e., COMPLAINS ABOUT WANTING HIS HEATER TURNED ON |
| | TREATMENT PLAN: CONTINUE ANTI-DEPRESSANT THAT HE STARTED 3 WEEKS AGO AS WELL AS TRANQUILIZER HE STARTED ON CTC |
| 11:00 TY SAW INTERVIEWS IN -> WILL SEND TO GYM | RECOMMENDATIONS TO CUSTODY: VERY CLOSE OBSERVATION W/ CHANGES REPORTED TO MH STAFF |
| | NEXT FOLLOW-UP SCHEDULED: ↓ SIGNATURE SNAVELY |
| DATE | SUICIDE PREVENTION 5-DAY FOLLOW-UP NOTES DAY# 2 DAVIS LPT |
| 11/23/2006 | Inmate was seen this day as part of a 5-Day Suicide Follow-Up after discharge from MHCB. He was seen in a confidential/non-confidential interview. |
| TIME | MENTAL STATUS EXAM: |
| | CONTINUING RISK FACTORS: |
| | TREATMENT PLAN: |
| | RECOMMENDATIONS TO CUSTODY: |
| | NEXT FOLLOW-UP SCHEDULED: SIGNATURE |

COPY

RETURNED TO MHCB ON 11-22-2006

| MENTAL HEALTH INTERDISCIPLINARY PROGRESS NOTES | LEVEL OF CARE | LAST NAME | FIRST NAME MI |
|---|---|---|---|
| CDC FORM MH-3 | Inpatient (circled) | MORAN | NICOLAS |
| Confidential Client/Patient Information | Outpatient CELL | CDC #: E12779 | HOUSING: B-1 123L |

COPY

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE**

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | | | DATE |
|---|---|---|---|---|---|
| [illegible] | | USE OF FORCE | INJURY / UNUSUAL OCCURRENCE | ON THE JOB INJURY / PRE AD/SEG ADMISSION | [illegible] |

| | NAME LAST | FIRST | CDC NUMBER / BADGE # | HOUSING LOC. / RANK/CLASS | NEW HOUSING LOC. / ASSIGNMENT/RDOs |
|---|---|---|---|---|---|
| THIS SECTION FOR INMATE ONLY | [illegible] | [illegible] | [illegible] | [illegible] | |
| THIS SECTION FOR STAFF ONLY | | | | | |

| | NAME LAST | FIRST | MIDDLE | DOB | OCCUPATION |
|---|---|---|---|---|---|
| THIS SECTION FOR VISITOR ONLY | | | | | |
| | HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE |
| | | | | | |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) |
|---|---|---|
| | | |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL (circle) LITTER / WHEELCHAIR / AMBULATORY / ON SITE | AGE | RACE | SEX |
|---|---|---|---|---|---|---|
| | | [illegible] | [illegible] | | [illegible] | [illegible] |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

COPY [illegible]

| INJURIES FOUND? YES / NO | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |




| | |
|---|---|
| O.C. SPRAY EXPOSURE? | YES / NO |
| DECONTAMINATED? | YES / NO |
| Self-decontamination instructions given? | YES / NO |
| Refused decontamination? | YES / NO |
| Q 15 min. checks | |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| [illegible] | |

TIME/DISPOSITION

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) | BADGE # | RDOs |
|---|---|---|
| [illegible] LVN | | |

(Medical data is to be included in progress note or emergency care record filed in UHR)

CDCR 7219 (Rev. 11/05) DISTRIBUTION: ORIGINAL - Custody CANARY - Inmate/Employee PINK - Health and Safety / RTW Coordinator

# KERN VALLEY STATE PRISON NURSING: Mental Health Nursing Assessment

**A. Appearance:** ___ Unremarkable ___ Disheveled ___ Poor Hygiene ___ Facial Grimacing
✓ Tatoos ___ Scars ___ Thin ___ Overweight

**B. Behavior:** ✓ Cooperative ___ Evasive ___ Aggressively Uncooperative ___ Passively Uncooperative
✓ Withdrawn ___ Lethargic ___ Agitated ___ Inappropriate Laughter
___ Fidgety ___ Aggressive ___ Suspicious/guarded
Eye contact: ___ Adequate ___ Minimal ___ Wild Eyed ___ Space Staring

**C. Speech:** ✓ Normal ___ Slurred/Garbled ___ Rapid ___ Loud
___ Other language ___ Hesitant ___ Mute ___ Soft

**D. 1. Mood:** ___ Normal ___ Hostile ✓ Depressed/Sad (circled) ___ Anxious ___ Detached
___ Irritable ___ Elevated ___ Expansive ___ Rapid Shifting
2. Sleep: 6 # of hours ___ Insomnia ___ Hypersomnia
3. Appetite: ✓ Normal ___ Increased ___ Decreased
4. Affect: ___ Appropriate ✓ Inconsistent ___ Sad ___ No variance in expression
___ Neutral ___ Excessively expressive ___ Decreased range of expression

**E. Cognition:**
1. Fund of Information ___ Adequate ✓ Below Average ___ Poor Historian
2. Intelligence ___ Average ✓ Borderline ___ Possibly retarded
3. Org. of Thought ___ Logical ✓ Illogical ___ Bizarre ___ Incoherent
4. Association of Thought ___ Normal ✓ Irrelevant ___ Tangential ___ Excessive pausing
5. Reality Contact ___ Adequate **Distortion...** ✓ Mild ___ Moderate ___ Severe
6. Reasoning ___ Abstract ✓ Functional ___ Concrete

**F. Hallucinations:** ✓ Hear (Auditory) (circled) ___ See (Visual) ___ Smell (Olfactory) ___ Touch (Tactile)
✓ Taste (Gustatory) (circled) ___ Other ___ None Rptd/Denied

**G. Delusions:** ✓ Paranoid (circled) ___ Grandiose ___ Bizarre ___ Denied/None reported
___ Religious ___ Being Persecuted ___ Somatic ___ Jealousy/Envy
**of being...** ___ controlled by others ___ influenced by others ___ talked about (teased) by others

**H. Sensorium:** Disoriented (Person, Place, Time, & Situation)
1. Orientation ✓ Time ✓ Person ✓ Place ___ Situation/purpose of infirmary admission
2. Memory ✓ Adequate **Impaired...** ___ Immediate ___ Recent (1-wk) ___ Remote (1-yr)
3. Attention ___ Adequate ✓ Fair (circled) ___ Poor ___ Hyper vigilant ___ Easily distracted

**I. Insight:** ___ Adequate ___ Limited ✓ Poor ___ Blames others ___ None observed
**J. Judgement:** ___ Adequate ✓ Poor (circled) ___ Impulsive ___ Grossly impaired ___ Refuses to answer Qs
**K. Attitude:** ___ Cooperative ✓ Passive ___ Evasive ___ Guarded ___ Exaggerates situation
___ Hostile ___ Intimidating ___ Impulsive ___ Specific Anger ___ Global Anger
___ Controlling ___ Demanding ___ Tearful ___ Argumentative

**L. Suicide Risk:** ___ Denies ✓ Has recently thought of Suicide (circled) ___ Would hurt self by: ___
___ Refuses to ans Qs ___ Suspected Possible Secondary Gain ___ Rpts. suicidal history
___ Vague responses ___ # of suicide attempts
✓ **Current Attempt...** (circled) ✓ **Lethal** (circled) ___ **Non-lethal** **Method used:** metal object (circled)
**Date of Last S-attempt:** 11/22/06 (circled) **Lethal // Non-lethal** **Method used:** ___

**M. Violence Risk** ✓ No overt evidence ___ Currently appears violent ___ Describes a history of Violence
___ Violent while incarcerated ___ Violent "on the street"

RN Signature [signature] RN Date Signed 11/22/06 Time ___
Comments:

| MENTAL HEALTH INITIAL NURSING ASSESSMENT<br><br>MH 3 [Nurse.mse.wpd]<br><br>Confidential Client/Patient Information<br>See W & I Code, Section 5328<br>State of California<br>Department of Corrections | LEVEL OF CARE<br><br>MHCB | Last Name: MORGAN, E.12779 First Name:<br><br>CDC # E 12779 DOB 08/17/63 |
|---|---|---|

State of California Department of Corrections Institution-Kern Valley State Prison COPY Prior Page Number

**CHRONOLOGICAL INTERDISCIPLINARY PROGRESS NOTE** All Staff Clinicians Treatment te

| Date | Time | |
|---|---|---|
| 11/22/06 | 2330 | S - Inmate states "I am suicidal" "I hear voices saying to kill myself" |
| | | O - Alert & oriented x3. Appears (sad & depressed) Responds question appropriately. Denies any pain & discomfort. (Has laceration on his (L) wrist c̄ dsg (dsg inplaced.) |
| | | A - (Risk for suicidal R/T actual suicidal attempt by cutting his wrists c̄ metal object.) |
| | | P - Suicidal watch c̄ 1-1 custody monitoring. (Remove all potentially harmful objects inside the cell. Psych eval & treatment as needed.) Cont. psych meds & observe adverse reaction |
| | | E - Encouraged inmate to verbalize concerns & thoughts to the staff & during IDTT meeting. [signature] RN |
| 11/23/06 | 0700 | Nursing: |
| | | S: I/M states, "I'm still suicidal, I want to hurt myself the voices are telling me to hurt myself." |
| | | O: I/M is alert & oriented. Mood & affect depressed. Eye contact good, speech clear. Respond to questions appropriately. Has dressing to (L) wrist laceration intact, Consumed 100% breakfast |
| | | A: (Risk for suicide R/T recent suicide attempt & suicidal thought/ideation) |
| | | P: (Continue to monitor on (suicide watch) for safety. Continue c̄ medications as ordered & monitor S/E. Removed all harmful objects in cell for safety. IDTT referral/evaluation.) |
| | | E. Encouraged to ventilate feelings & concerns. Educated on the importance of medication & Tx plan. [signature] RN |

Inmate Name: Last, First, MI

MORGAN, N

**MENTAL HEALTH**
**INTERDISCIPLINARY PROGRESS NOTES**
**MH-3** Inpatient

Confidential Client/Patient Information
See W & I Code, Section 5328

(Outpatient)

CDC # E 12779 DOB: 8/17/63

#87

COPY

#97

State of California, Department of Corrections: Service Area: Central, Institution: Kern Valley State Prison

**MENTAL HEALTH TREATMENT PLAN: Sequential Part One Identifier Number** Page 1 of 3

☒ Original ☐ Update ☐ Rejustification ☐ CCCMS Annual Case Review

| | | |
|---|---|---|
| **I. General Information:**<br>Arrival Date This Treatment Setting: 11 / 22 / 06<br>☐ CCCMS ☐ EOP ☒ MHCB/Infirmary<br>☐ PSU -- ☐ ______ week observation.<br>Anticipated Date of Transfer to GP: / / | **By:** ☐ Team ☐ Individual<br>☐ MH 6 ☐ C File ☐ Health Record<br>☐ Unit Health Record ☐ MH 1<br>☐ MH 4 ☐ Prior MH 2 _/_/_ | Today Date 11 / 23 / 06<br>Next Up Date ___/___/___ |

| II. Print Name of Team Members | Position | Signatures |
|---|---|---|
| V. SCHOMER, M.D. STAFF PSYCHIATRIST | Psychiatry | [signature] |
| | Psychology | |
| RN MT Baun | Nursing | [signature] RN |
| C.O. Mosqueda | Custody | [signature] |
| | Sr. Psychologist | |
| RN L. Estrada | ~~Social Worker~~ RN | [signature] RN |
| | CC1, CC2, CC3 | |
| | Rec. Therapist | |
| | V. SCHOMER, M.D. STAFF PSYCHIATRIST | |

**III. Present Mental Status** Date 11 / 23 / 06 By: ~~G. Schmidt, Psy. D.~~ [initials] Title: Mental Health Clinician

A) Appearance ☐WNL agitated, disheveled

B) Behavior ☐WNL agitated Speech ☐WNL rapid - pressured

C) Mood ☐WNL anxious, tense Sleep ☐WNL poor Appetite ☒WNL Affect ☐WNL labile

D) Cognition:

1) Fund of Information ☐WNL Impoverished ... poor
2) Intellectual Functions ☐WNL ... low functioning
3) Organization of Thought ☐WNL (Illogical) Bizarre ...
4) Association of Thought ☐WNL (Loose) Tangential Chaotic ...
5) Reality Contact ☐WNL (Distorted: (Mild) to (Moderate) . Severe) ...
6) Thought Quality ☐WNL (Poor) Fair

E) Hallucinations ☒Denied

F) Delusions: ☐ Denied ~~likely to~~ possible - hard to tell - IM hides thoughts

G) Sensorium: Orientation x4 Memory poor Attention short Concentration poor ☐WNL

H) Insight ☐WNL poor Judgment ☐WNL poor

I) Interview Attitude ☐WNL poor - cooperative but hides data

J) Current Suicidality ☐ Denied ☐ None observed or stated. yes - will cut self again as he did to get in here

K) Current Violence ☒ Denied ☒ None observed or stated.

| MENTAL HEALTH TREATMENT PLANS, UPDATES, REJUSTIFICATION<br>MH 2 [3/29/96]<br>Part One: General, Team, MSE<br>Diagnosis, Problems, Inmate Strengths<br>Part Two: Problem Pages -- Results<br>Confidential Client/Patient Information | LEVEL OF CARE<br>MHCB<br>Bed: 103 | Last Name: Moran First Name: Nicholas<br>CDC #: E12779 DOB: 8-17-62 |
|---|---|---|